[Crim. No. 1610. Second Appellate District, Division Two.—November 1, 1928.]

THE PEOPLE, Respondent, v. ELMER NORMAN BAKER, Appellant.

630

[REDACTED]

Cooper & Collings and George R. Shreve for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and John D. Richter for Respondent.

CRAIG, J.—On or about January 15, 1927, one Mike Trifoni, a shoemaker, was attacked in his shop in the city of Los Angeles by a robber, and during a struggle which ensued between them the latter was shot and killed. Baker was prosecuted for the crime, which resulted in a verdict of murder in the first degree, recommending life imprisonment. He moved for a new trial, which was denied, and appeals from the judgment and order denying a new trial. Appellant seeks a reversal upon the ground that the evidence was wholly circumstantial, and that it was insufficient, particularly as to identification, to support the verdict and judgment.

Trifoni testified that at about 11 o'clock P. M. of said date a man entered his place of business, produced a .45 caliber pistol, and ordered him to throw up his hands and give him his money; that the witness then caught the man's hands, and was wrestling with him when the latter's revolver was discharged several times; that "then the other fellow was outside and was shooting" from near the sidewalk; that the robber suddenly relaxed, fell to the floor, and a man who resembled the defendant entered with a pistol in his hand, ordered Trifoni to stand by the wall, took the revolver from the hand of the first intruder, went outside, and departed in an automobile in which about six others apparently were waiting. He testified that the second man who entered carried a small gun of about .32 or .38 caliber. Police officers immediately entered the store

and found the first arrival lying face downward. It is not denied that he was dead, that a .38 caliber bullet had pierced his heart, and that three .45 caliber empty shells lay on the floor outside, and five .38 caliber shells were found outside of Trifoni's establishment. It affirmatively appears, in part from appellant's own testimony, that he and the deceased, who proved to be one Paul Cotham, had been friends for about five years, and that they were living together at the time of the homicide; that they visited an acquaintance by the name of Nelson, who loaned them his automobile, and that Cotham also inquired if Nelson would loan him his .45 caliber automatic pistol, which Nelson replied that he was not "in the habit of loaning"; that they drove about the city, finally stopping in front of Trifoni's store, and that Cotham asked Baker to wait for him, alighted, entered the store, and almost immediately shots were heard by the defendant. Appellant testified that he at once drove to the apartment where he and Cotham had been living, and left the car standing in the street; that he spent the night at a hotel in another part of the city, but did not communicate with Nelson regarding the whereabouts of the automobile, nor the shooting; that on the following morning at about 6 o'clock he went to San Pedro, shipped to New York on a tanker, and from there sailed to Italy, from whence he returned some months later. Following his arrest, and on October 27, 1927, the defendant made a statement to officers in which he replied to questions that he had been anxious to leave Los Angeles for some time, but that he was without money. He was asked when they had discussed holding up the shoemaker, to which he replied: "It wasn't discussed. I did not know what he was going to do at all. He never told me of his plans or what he was going to do." The statement contains also the following question and answer: "Q. When you and Cotham went to this shop, was anybody else along, or just you and he? A. There was no one with us. There was no one else in this affair but us."

It was the theory of the People that Cotham did in fact borrow Nelson's .45 caliber revolver, as well as his automobile, and that both he and Baker were armed; that Cotham entered the shop for the purpose of holding up and robbing Trifoni, while Baker remained in or near the automobile,

and that seeing his partner and friend of some years apparently in danger, appellant fired several shots from a .38 revolver, intending to disable or kill Trifoni, but which in fact struck Cotham; that appellant then entered the store and obtained Cotham's weapon which might be a means of identification, and fled. There was some testimony that Cotham had theretofore stated that he was in fear of being killed by Italians, and appellant contends that the homicide may have resulted from a smoldering animosity between the deceased and the Trifonis, who were of that nationality. It is insisted that in any event the man who took the pistol from the hand of the deceased was not sufficiently identified as the appellant to justify the jury in convicting him of the crime.

It cannot be doubted that the defendant and Cotham drove to Trifoni's place of business together in Nelson's automobile, since Baker so admitted, and swore that he witnessed the shooting, and immediately drove away, but did not return the car to its owner. The Trifonis testified that the man who entered and took the .45 caliber had a mustache and sideburns, but that he resembled the defendant, who at the time of the trial wore none. A photograph of the defendant, which had been identified by Nelson as that of Baker, was shown to Mr. and Mrs. Trifoni, and while neither of them was positive that it was a picture of the man who entered their store and was on trial, they both testified that it looked like him. Trifoni testified, ''The picture looks like him''; ''The front view looks like him.'' Mrs. Trifoni stated that she was in doubt; that ''If he had his mustache and long sideburns and his hair, and, of course, his suit and everything, just like that fellow that came in, I would say it was the man''; ''His forehead and his eyes are just like that man that came in the store.'' Another witness swore that a ''man resembling Baker got out of the car.'' This evidence, together with the fact that the defendant was present at the time of the shooting, but failed to notify Nelson that a mutual friend had been mortally wounded or shot to death, and did not return the automobile nor spend the night at his own place of abode, but stayed at a strange hotel some distance from home, and early on the following morning left the city under the circumstances herein detailed, constituted considerable substantial grounds

upon which the jury might well have based its conclusion that the man who fired from outside the store, entered with a .38 caliber revolver with which Cotham was killed, and was photographed and brought to trial before them, was one and the same person, and that his movements strongly tended to show guilty knowledge. ■ Circumstantial evidence need not in order to justify the inference of legal guilt consist of inculpatory facts which are absolutely and to the point of demonstration incompatible with innocence. "A conviction in the minds of the jurors to a moral certainty and beyond a reasonable doubt, arising from the evidence of the defendant's guilt, is sufficient." (*People* v. *Bellamy,* 109 Cal. 610 [42 Pac. 236].) Circumstantial evidence may be as conclusive in its convincing force as the testimony of direct witnesses to the overt act. "Circumstances very largely control the conduct of men in the most important affairs of life and may be sufficient to justify a conviction of crime where they are such as to exclude any other reasonable theory than that of guilt of the accused." (*People* v. *Nagy,* 199 Cal. 235 [248 Pac. 906].) That the defendant was at or near the scene of the crime at the time of its commission may be considered by the jury (*People* v. *Woodward,* 45 Cal. 293 [13 Am. Rep. 176]), and the fact that witnesses are unable positively to identify him but express a belief that he was the person seen, may be received and weighed by them in connection with all other evidence before them. (*People* v. *Young,* 102 Cal. 411 [36 Pac. 770]; *People* v. *Botkin,* 9 Cal. App. 244 [98 Pac. 861].)

■ Error is assigned to the failure of the court to grant a continuance of the trial and to furnish the defendant with a stenographic copy of the testimony given before the grand jury. It appears, however, that at the time of returning the indictment in the instant case no stenographic reporter was present, and no report was made of which a copy could have been furnished. It was optional with the district attorney to demand such service, and it was not error to refuse a continuance in the absence of a stenographic report. (*People* v. *Doble* (Cal. App.), 257 Pac. 81; *In re Kennedy,* 144 Cal. 634 [103 Am. St. Rep. 117, 1 Ann. Cas. 840, 67 L. R. A. 406, 78 Pac. 34].)

■ It is next contended that a statement made by the defendant to police officers shortly after his arrest was inad-

missible, and that the court erred in allowing it to be read to the jury. It is observed, however, that while the accused was being questioned by the officers he denied having had any participation in the crime, but was cautioned and warned as to the use which might be made of any statements he might make, and that he freely and voluntarily gave information as to his residence, acquaintance with Nelson and Cotham, borrowing his automobile and driving to Trifoni's place of business. He also stated in detail his movements thereafter, as heretofore related. When asked pertinent questions as to his connection with or knowledge of the murder he declined to answer until he could consult an attorney. He made no confession, and hence the argument on behalf of appellant in this respect is without merit. (*People* v. *Peete,* 54 Cal. App. 333 [202 Pac. 51].)

The trial court read to the jury section 1096 of the Penal Code, which is as follows:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.' "

It is complained that the court erred in refusing three instructions requested by the defendant upon the questions of mere suspicion of guilt, preponderance of evidence, credibility of witnesses, and reasonable doubt, and appellant argues that merely reading the instruction above quoted from the code was not sufficient. All of the elements of the instructions which were refused appear in those which were given in addition to the section above mentioned. Section 1096a of the same code provides:

"In charging a jury, the court may read to the jury section 1096 of this code, and no further instruction on the

subject of the presumption of innocence or defining reasonable doubt need be given." (Stats. 1927, p. 1039.)

Appellant contends that reading to the jury an omnibus instruction embracing the substance of several separate instructions, and refusing to give those offered deprived him of his liberty without due process of law, in violation of his constitutional guaranties. As held in *People* v. *Egan*, 91 Cal. App. 44 [266 Pac. 581], section 1096 of the Penal Code merely codifies the legal principles upon which juries have been instructed for years. Having once given an instruction, it is also a rule of long standing that it is not error to refuse to again state the law in the phraseology requested by the defendant. (*People* v. *McPhee*, 26 Cal. App. 218 [146 Pac. 522].) He may submit instructions, but beyond this he has no legal right to dictate their form or substance. (*People* v. *Dodge*, 30 Cal. 448.)

The judgment and order denying a new trial are affirmed.

Works, P. J., and Thompson, J., concurred.