[Crim. No. 2228. Second Appellate District, Division One.—August 24, 1932.]

THE PEOPLE, Respondent, v. LEOLUCA PATELLO et al., Appellants.

Haines & Bisher for Appellants.

U. S. Webb, Attorney-General, John D. Richer, Deputy Attorney-General, Buron Fitts, District Attorney, and Hugh McIsaac, Deputy District Attorney, for Respondent.

HOUSER, J.—Defendants appeal from a judgment of conviction of the crime of arson and the crime of burning insured property.

The only point raised by them on their appeal is that the evidence adduced on the trial of the action was insufficient to sustain the judgment.

A consideration of the record herein discloses the following incriminatory circumstances, to wit: The defendants sustain the relation one toward the other of brother and sister. Together they lived as the sole occupants of a six-room, one-story building, of which, to the extent that it was being purchased on a contract of sale by the defendant Patello, and that at the time of the partial burning of the same he owed about $1500 on the purchase price thereof, of which sum he was delinquent in approximately the amount of $300, defendant Patello was the owner. The "sound" value of the building at the time it was burned was $1858, and its "replacement" value was $2,445; but, as appears from the evidence, the defendant carried an insurance policy on the building in the sum of $3,000. Defendant Florio was the owner of the furniture stored in the said building, on which, although its "sound" value was but $594.65, she carried an insurance policy in the sum of $1500. At the time of the fire she was in poor health. She had no income, and her cousin and her brother had been advancing money to her for the purpose of paying doctor's bills which she had contracted. The evidence shows that on the day on· which the fire occurred defendant Patello left the house in question at about 3:30 o'clock in the afternoon, and that the defendant Florio left the premises at about 7 o'clock P. M. of the same day. Defendant Patello was engaged in the fruit busi-

ness and was occupied in the conduct thereof from 3:30 o'clock in the afternoon until 11:30 o'clock on that night, at about which time he was arrested. On leaving her home, defendant Florio went to the house of a neighbor, which was directly across the street from the place of business of her brother Patello, at which former place she remained during the whole of the night on which the fire occurred. It appears that at her brother's place of business she had left word for him to call for her at the place at which she was visiting as soon as he completed his business transactions for the day or the night; but that on his failure to call for her, defendant Florio spent the night with the neighbor as aforesaid. When arrested, defendant Patello stated in substance that "he absolutely did not know where she (his sister) could be reached".

The fire in the home of the defendants was discovered at approximately five minutes after 9 o'clock P. M. On arriving at the house, the firemen found the windows closed, the shades drawn, and the front and the rear doors of the house locked. On breaking into the house, fire was discovered in each of three different rooms thereof. The door leading from the kitchen to the living room was locked on the living-room side, and each of such rooms was on fire. Hose was played on the fire and it "flashed up". An odor of kerosene was present. In the kitchen a pasteboard carton about two-thirds full of a white substance with an odor similar to that of kerosene or coal-oil, was found, and connected with said carton was a streamer of cotton-batting which led "up over a chair and down on the floor". The appearances indicated that a quantity of oil, apparently the draining from a crank-case of an automobile, had been poured on the floor. The bathroom floor was covered with oil with the odor of a petroleum product similar to crank-case drippings. Defendant Florio denied that there ever had been kept in the house any gasoline, coal-oil or cleaning fluids of the type that was found therein. In substance, defendant Patello stated that he did not know whether he had any insurance on the property; " . . . that he believed the insurance policy had lapsed and . . . didn't remember whether he had a renewal or not". As to the furniture in the house, defendant Florio stated that "she didn't recall whether she had it insured, or not".

■ With reference to the effect of circumstantial evidence of the guilt of a person accused of the commission of a criminal offense, the broad rule has been generally announced that to justify a verdict of guilty such evidence "must be not only consistent with the hypothesis of guilt, but inconsistent with any other rational hypothesis. The deduction to be drawn from these circumstances is ordinarily one for the jury, but where . . . every circumstance relied on as incriminating is equally compatible with innocence, there is a failure of proof necessary to sustain a conviction, and the question presented is one of law for the court. . . . " (*People* v. *Staples,* 149 Cal. 405, 425 [86 Pac. 886, 894].)

In substance, the appellants contend that none of the evidence adduced against them, or either of them, nor all of the several items of such evidence combined, neither is nor was inconsistent nor incompatible with their innocence.

Taken literally and in its strict construction, it may not be denied that if applied to the facts of the instant case, either piece by piece, or as an entirety, the principle of law announced in the Staples case, *supra,* would indicate that purely from a legal standpoint the evidence was "compatible with innocence" of the accused. But it is common knowledge that in practically every criminal prosecution that is dependent for its success upon circumstantial evidence each fact adduced is not only susceptible of a "rational hypothesis" of innocence of the accused, but also is possibly as compatible with his innocence as it is with his guilt. As a homely illustration, let it be supposed that a negro is being prosecuted for stealing watermelons from a patch which lies across the road from a cemetery. The evidence shows that he was seen on the road just before he reached the watermelon patch, at which time he had no watermelons in his possession, but that after he had passed the watermelon patch he was seen running very rapidly, with a stolen watermelon under each arm. A "rational hypothesis . . . equally compatible with the innocence" of the negro might be that he found the watermelons in the road, and that he was running because he was afraid of ghosts. But in reliance upon the principle of law announced in the Staples case, as applied to such facts, would the trial court be justified or authorized to declare that there was "a failure of proof necessary to sustain a conviction"? It is manifest that if the answer must

be in the affirmative, then must fail a very large majority of the prosecutions for the perpetration of crimes which are secretly committed, wherein the proof not only as to the *corpus delicti*, but as well of the criminal participation therein of the accused, must be presented, not by eye-witnesses, or by direct evidence of their commission, but perforce by facts which in their nature are wholly circumstantial. But as a legal proposition it is unthinkable that the language employed by the court in the Staples case, to which attention has been directed, was ever intended by its author, or by the court as a whole, to have placed upon it such a construction as hereinbefore has been indicated. Rather was it intended and expected that where the evidence as presented by relevant circumstances was reasonably inferentially capable of producing to a moral certainty a conclusion of guilt of the accused, the mere fact that by assuming some fanciful position, or by adopting as true and correct some fantastic, or absurd hypothesis favorable to the accused, his innocence might be indicated,—presented no hard-and-fast or legally compelling situation which demanded an acquittal. Nor on appeal from a judgment of conviction is it to be understood from the mere fact that even though it may appear to the appellate tribunal that, from its view of the cold record, all the incriminating circumstances are compatible with the innocence of the accused, and as a consequence thereof that a verdict of acquittal would have been amply justified,—the evidence is sufficient in legal contemplation to require or to exact from the court an order of reversal of the judgment. The right to draw proper inferences from the evidence submitted is the function of the jury; and as long as its conclusion does no violence to reason, an appellate court is not permitted to substitute its finding of the ultimate fact for that reached by the constitutional as well as the statutory arbiter thereof. On the ground here urged by the appellants an interference by the appellate court with a verdict of guilt of the accused is warranted only when the evidence, rightly considered, unmistakably leads to an inference of innocence; or, on the other hand, that the unquestioned and unquestionable evidence adduced on behalf of the defendant so largely preponderates in favor of the innocence of the accused, over that presented by the prosecution, that it clearly appears

that the verdict was not the result of that deliberate and judicial action on the part of the jury which the administration of justice demands, but rather was induced by that sinister influence legally denominated as passion and prejudice.

In the case of *People* v. *Muhly*, 15 Cal. App. 416, 419 [114 Pac. 1017, 1018], where a situation similar to that here under consideration was before the appellate court, and in which the language employed by the court in the case of *People* v. *Staples*, 149 Cal. 405, 425 [86 Pac. 886], was construed, in part it was said:

"We do not understand that case to hold that where the circumstances are such as to reasonably justify the inference of guilt, the case will be taken from the jury because an inference of innocence might also reasonably have been drawn. Between these two inferences the jury must choose, and it is only where the evidence obviously does not warrant the inference of guilt that the court will interfere. This must be so, or the weight of the circumstantial evidence, and the inferences to be drawn from it in almost every case, must finally be determined by the appellate court, thus making the court the arbiter of both law and fact. In our judgment, a verdict of a jury, and the judgment of conviction based upon circumstantial evidence, come to us as any other verdict and judgment, clothed with like presumption of support; and unless we can say that the inference of guilt drawn from the evidence was wholly unwarranted, we cannot interfere."

Again, in *People* v. *Martinez*, 20 Cal. App. 343, 344 [128 Pac. 952, 953], wherein an analogous principle of law was the subject of discussion, the conclusion by the appellate court, as indicated by the following quotation, was identical with that reached in the case last cited, to wit:

"Where the circumstances are such as to reasonably justify an inference of guilt, as found by the jury, the fact that an inference of innocence might likewise be reasonably drawn therefrom does not present a question of law for review by an appellate court any more than does a verdict based upon direct conflicting evidence; in neither case will the verdict be disturbed. We are not unmindful that the Supreme Court in *People* v. *Staples*, 149 Cal. 405 [86 Pac. 886], employs language seemingly inconsistent with this view,

and upon which appellant claims that if upon review this court is of the opinion that the circumstances are reasonably compatible with defendant's innocence, then, notwithstanding the fact that they reasonably justify the inference of guilt drawn therefrom by the jury, he is entitled to a reversal of the judgment. . . . In this case the circumstances established reasonably justified the conclusion of the jury as expressed in their verdict, and even though this court were of the opinion that such circumstances might be reasonably reconciled with the innocence of defendant, such fact does not warrant interference . with the determination of the jury.''

Likewise in *People* v. *Mitsunaga*, 91 Cal. App. 298, 301 [266 Pac. 1020].

Bearing upon the question here at issue is the case of *People* v. *Stine*, 110 Cal. App. 156 [293 Pac. 907, 910]. Among the authorities there cited is that of *People* v. *Willard*, 150 Cal. 543, 553 [89 Pac. 124]. It is there announced: ''This court cannot disturb a verdict unless there is no evidence to support it, or where the evidence relied upon by the prosecution is apparently so improbable or false as to be incredible, or where it so clearly and unquestionably preponderates against the verdict as to convince this court that its return was the result of passion or prejudice on the part of the jury.''

And so in the case of *People* v. *Wong Chong Suey*, 110 Cal. 117 [42 Pac. 420, 421], wherein it is said that the finding of the jury will not be disturbed ''unless the evidence preponderates so greatly against the verdict as to make it manifest that the verdict is the result of passion or prejudice.''

 Reverting to the undisputed facts which are disclosed by the evidence adduced on the trial of the action and as hereinbefore set forth, it becomes plain that they fairly warranted the inference of guilt of the defendants which was expressed by the judgment. (*People* v. *Scott*, 13 Cal. App. 301 [109 Pac. 498]; *People* v. *Stern*, 94 Cal. App. 85 [270 Pac. 706].)

The incriminating circumstances were such that on consideration thereof, together with the judgment, not even the suggestion of passion or prejudice on the part of the trial court may rightly be indulged.

■ With particular reference to the appeal of defendant Florio, the record discloses the fact that, following the rendition of the judgment, each of the defendants made application for probation. In that connection, the order of the trial court was "that proceedings as to defendant Leonarda Florio be suspended and said defendant granted probation for a period of three years", etc. Thereupon, she appealed "from the judgment and sentence . . . "

Section 1237 of the Penal Code provides that an appeal may be taken by a defendant "from a final judgment of conviction; . . . from any order made after judgment, affecting the substantial rights of the party".

Since it appears that no "final judgment of conviction" had been rendered, it follows that by statutory provision defendant Florio had no right of appeal. (*People* v. *Hartman*, 23 Cal. App. 72, 74 [137 Pac. 611]; *People* v. *De Voe*, 123 Cal. App. 233 [11 Pac. (2d) 26]; *United States* v. *Lecato*, 29 Fed. (2d) 694, 695, where in support of the rule many authorities are cited.)

It is ordered that as to defendant Patello the judgment be and it is affirmed. It is further ordered that as to defendant Florio her appeal herein be and it is dismissed.

Conrey, P. J., and York, J., concurred.