[Crim. No. 4292. In Bank.—July 22, 1940.]

THE PEOPLE, Respondent, v. JOHN NEWLAND, Appellant.

Martin S. Ryan for Appellant.

Earl Warren, Attorney-General, L. G. Campbell, Deputy Attorney-General, Buron Fitts, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

SHENK, J.—The defendant was tried by the court without a jury and found guilty on a charge of keeping for gain or reward a room with books for the registering of wagers on horse races. (Sec. 337a, subd. 2, Pen. Code.) He applied for probation, which was granted. Judgment of conviction was entered on September 13, 1939, but sentence of six months in the county jail was suspended for a period of two years on condition that he serve the first thirty days in the county jail, that he have nothing to do with book-making or gam-

bling activities of any kind, and that he make the usual reports.

The case was submitted to the trial court on the transcript of testimony taken at the preliminary examination. On this appeal from the judgment the defendant contends that the evidence was insufficient to support his conviction.

The arrest of the defendant was made at 3167 Cahuenga Boulevard in the city of Los Angeles. Two officers entered the premises about 3:30 o'clock on the afternoon of June 15, 1939. The place was a U-shaped court on the street side of which were stores and over which was a lodging house containing a living room, kitchen, several bedrooms, and what is designated as lavatory and bath. The defendant and one Miller were coming out of the lavatory when the officers entered. The officers ordered them to go back where they had been. The defendant led the way back but, instead of obeying the command, he continued down a dark hallway and escaped into the street. The officers found a home-made ladder behind the lavatory leading through a false door to a room over the lavatory. In that room, reached only by the ladder, were five telephones and a teleflash, counter, chairs, some A B C betting markers, and "rundown sheets" commonly used in recording bets accepted on scheduled horse races. A check of numbers found on the sheet tallied with the names of horses scheduled to run that day. Also found on the sheet were amounts wagered, the bets made, and the results of the races. The telephone receivers were off the hooks. When they were replaced by the officers the telephones started ringing, and the teleflash started working.

The defendant Newland returned to the premises about 6:45 o'clock that evening. The officers watched him enter the house and go through the living room to the lavatory. He was coming from the vicinity of the lavatory when he was arrested. At the time of his return several men in an intoxicated condition were occupying the living room and the bedrooms. One of the officers testified: "I first asked him why he had escaped from the officers. I said, 'now you will have two charges, book-making and escape'. He said he didn't have anything to do with book-making. I said, 'How did you know there was book-making up there?' He said 'Well, I heard about it.' I asked him what he was doing up there.

He said he come over to see some friends. I asked him which ones. He didn't say or wouldn't say the names.''

The officers found on the person of the defendant A B C markers similar to those on the counter in the room over the lavatory, with pencil notations on them; $52 in currency; and keys, one of which fitted the lock of the front door of the premises. The defendant asked to be released because his little girl was graduating that night, and he was supposed to meet her in thirty minutes. He refused to state the name of the school where he claimed the graduation exercises were to take place. He was a married man, and lived with his wife a short distance from the premises described herein. He did not testify at the trial or at his preliminary examination.

█ The defendant contends that the evidence was insufficient to connect him with the book-making paraphernalia and activities found on the premises where he was arrested. Reliance is placed on the cases of *People* v. *Staples*, 149 Cal. 405 [86 Pac. 886], and *People* v. *Lamson*, 1 Cal. (2d) 648 [36 Pac. (2d) 361]. In the Staples case it was attempted to prove the defendant physician guilty of the murder of his wife by administering poison. There was no proof that the wife died of poisoning. There had been an epidemic of typhoid fever and she had contracted the disease. It was held that the *corpus delicti* had not been established and that the evidence was therefore insufficient to prove guilt. It was declared that ''where the evidence is of such a [circumstantial] character it must be not only consistent with the hypothesis of guilt, but inconsistent with any other rational hypothesis. The deduction to be drawn from these circumstances is ordinarily one for the jury, but where, in a case such as this, every circumstance relied on as incriminating is equally compatible with innocence, there is a failure of proof necessary to sustain a conviction, and the question presented is one of law for the court. The prosecution has the burden of proof. The defendant is presumed innocent until the proof satisfies the jury beyond a reasonable doubt of his guilt. The right of a jury to return a verdict of guilty is not an arbitrary right. The sufficiency of their verdict must be tested by determining whether the evidence upon which that verdict is framed was of such a character that they could say from it that in their judgment no reasonable doubt of the defendant's guilt existed.''

As to the Lamson case, it may be said that nothing was decided in that case except that the judgment be reversed. On no other question involved on the appeal was there a concurrence of a majority of the members of the court. Therefore that portion of the first opinion in that case which quoted and approved the above excerpt from the Staples case, cannot be considered an adjudication or an effective approval of the declaration in the prior case.

The holding of the Staples case is to be strictly confined to situations where the reviewing court as a matter of law must conclude that there is no evidence, circumstantial or otherwise, that a crime has been committed, and therefore the evidence of guilt is insufficient. The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal "will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground" of insufficiency of the evidence, "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict." If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (*People* v. *Perkins,* 8 Cal. (2d) 502 [66 Pac. (2d) 631]; *People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389]; also, *People* v. *Green,* 13 Cal. (2d)

37 [87 Pac. (2d) 821] ; *People* v. *Latona,* 2 Cal. (2d) 714 [43 Pac. (2d) 260] ; *People* v. *Tedesco,* 1 Cal. (2d) 211 [34 Pac. (2d) 467] ; *People* v. *Bresh,* 33 Cal. App. (2d) 161 [91 Pac. (2d) 193] ; *People* v. *Wilson,* 33 Cal. App. (2d) 194 [91 Pac. (2d) 207].) In the Perkins case this court expressly rejected the application of the statement from the Staples case to a situation which involved only circumstantial evidence. As pointed out by the court the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review. It said: "The rule above announced does no more than to instruct the jury that, if a reasonable doubt is created in their minds for any reason, they must acquit the defendant. But, where the jury rejects the hypothesis pointing to innocence by its verdict, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypothesis, this Court is bound by the finding of the jury." Also, in *People* v. *Smith,* 35 Cal. App. (2d) 73 [94 Pac. (2d) 633], involving facts similar to those presented in the case at bar, where the trial was without a jury, it was stated that "it is a matter for the trial judge to be persuaded beyond a reasonable doubt and not this court."

As early as the case of *People* v. *Muhly,* 15 Cal. App. 416 [114 Pac. 1017], the correctness of the statement in the Staples case was questioned and limited, in view of the constitutional provision making the jurors the exclusive judges of the facts. It was there said, at pages 418, 419: "The principle enunciated in the Staples case is undoubtedly proper to be given as an instruction to the jury, . . . But we do not think it can be accepted, or was intended to be accepted, as a rule of universal application to guide the appellate court in all cases arising out of or dependent upon circumstantial evidence. . . . We do not understand that case to hold that where the circumstances are such as to reasonably justify the inference of guilt, the case will be taken from the jury because an inference of innocence might also reasonably have been drawn. Between these two inferences the jury must choose, and it is only where the evidence obviously does not warrant the inference of guilt that the court will interfere. This must be so, or the weight of the circumstantial evidence, and the inference to be drawn from it in almost

every case, must finally be determined by the appellate court, thus making the court the arbiter of both law and fact. In our judgment, a verdict of a jury, and the judgment of conviction based upon circumstantial evidence, come to us as any other verdict and judgment, clothed with like presumption of support; and unless we can say that the inference of guilt drawn from the evidence was wholly unwarranted, we cannot interfere.''

In *People* v. *Martinez,* 20 Cal. App. 343 [128 Pac. 952], it was said: "Where the circumstances are such as to reasonably justify an inference of guilt, as found by the jury, the fact that an inference of innocence might likewise be reasonably drawn therefrom does not present a question of law for review by an appellate court any more than does a verdict based upon direct conflicting evidence; in neither case will the verdict be disturbed. We are not unmindful that the Supreme Court in *People* v. *Staples,* 149 Cal. 405 [86 Pac. 886], employs language seemingly inconsistent with this view, and upon which appellant claims that if upon review this court is of the opinion that the circumstances are reasonably compatible with defendants innocence, then, notwithstanding the fact that they reasonably justify the inference of guilt drawn therefrom by the jury, he is entitled to a reversal of the judgment.'' The court's reply was taken from the quotation hereinabove made from the case of *People* v. *Muhly, supra.*

In *People* v. *Clark,* 70 Cal. App. 531 [233 Pac. 980], the defendant relied for reversal on the fact that the *corpus delicti* was not established except by circumstantial evidence. The circumstances indicated that the defendant had murdered the deceased and disposed of the remains by burning them. The court pointed out that it would only be necessary for the murderer to dispose of the remains in order to escape the penalty. It cited and relied upon many authorities, including *People* v. *Wilkins,* 158 Cal. 530 [111 Pac. 612], to the effect that the *corpus delicti* may be established by circumstantial evidence. The court in the Wilkins case quoted with approval from Rice on Evidence, volume 3, pages 465, 466, as follows: "Nor is it necessary that the *corpus delicti* should be proved by direct and positive evidence. It would be most unreasonable to require such evidence. Crimes, and especially those of the worst kinds, are naturally committed at chosen times, and in darkness and secrecy; and

human tribunals must act upon such indications as the circumstances of the case present or admit, or society must be broken up." (See, also, *People* v. *Bonilla,* 114 Cal. App. 219, 225 [299 Pac. 784]; *People* v. *Baker,* 94 Cal. App. 628 [271 Pac. 765].) Likewise, in *People* v. *Patello,* 125 Cal. App., page 480 [13 Pac. (2d) 1068], it was said: "Taken literally and in its strict construction, it may not be denied that if applied to the facts of the instant case, either piece by piece, or as an entirety, the principle of law announced in the Staples case, *supra,* would indicate that purely from a legal standpoint the evidence was 'compatible with innocence' of the accused. But it is common knowledge that in practically every criminal prosecution that is dependent for its success upon circumstantial evidence each fact adduced is not only susceptible of a 'rational hypothesis' of innocence of the accused, but also is possibly as compatible with his innocence as it is with his guilt"; that if the rule of that case applied with the effect contended, "then must fail a very large majority of the prosecutions for the perpetration of crimes which are secretly committed, wherein the proof not only as to the *corpus delicti,* but as well of the criminal participation therein of the accused, must be presented, not by eye-witnesses, or by direct evidence of their commission, but perforce by facts which in their nature are wholly circumstantial. But as a legal proposition it is unthinkable that the language employed by the court in the Staples case . . . was ever intended by its author, or by the court as a whole, to have placed upon it such a construction as hereinbefore has been indicated."

From the foregoing it follows that on appeal and in this case the defendant's contention that the circumstantial evidence which is incriminating is insufficient to establish his guilt because such evidence might also be deemed compatible with innocence, cannot be sustained. The evidence against defendant herein is clearly sufficient to support the trial court's conclusion that he was the keeper of the book-making apparatus above the lavatory. (*People* v. *Borrego,* 211 Cal. 759 [297 Pac. 17]; *People* v. *Smith,* 35 Cal. App. (2d) 73 [94 Pac. (2d) 633]; *People* v. *Roseberry,* 23 Cal. App. (2d) 13 [71 Pac. (2d) 944]; *People* v. *Helt,* 100 Cal. App. 279 [279 Pac. 1046]; *People* v. *Schneider,* 36 Cal. App. (2d) 292 [98 Pac. (2d) 215].)

The defendant places special reliance on the cases of *People* v. *Yoder,* 35 Cal. App. (2d) 347 [95 Pac. (2d) 470], *People* v. *Fisk,* 32 Cal. App. (2d) 26 [89 Pac. (2d) 142], and *People* v. *Rabalete,* 28 Cal. App. (2d) 480 [82 Pac. (2d) 707], wherein judgments of conviction of similar offenses were reversed because of insufficiency of the evidence to connect the defendant with book-making activities. As reiterated in the cases hereinbefore cited, the decision whether there is sufficient evidence to support the judgment of conviction must depend upon the circumstances of each case. There is nothing presented by the cases specially relied upon which would justify a reversal in this case. Anything stated in those cases which is inconsistent with the views herein expressed is disapproved.

The judgment is affirmed.

Curtis, J., Carter, J., Edmonds, J., and Gibson, C. J., concurred.