[Crim. No. 3626.   Second Dist., Div. Two.   Oct. 29, 1942.]

THE PEOPLE, Respondent, v. LEONE PRUITT, Appellant.

Horace H. Appel for Appellant.

Earl Warren, Attorney General, and Burdette J. Daniels, Deputy Attorney General, for Respondent.

MOORE, P. J.—Defendant was accused by information of violating 337a, subdivision 2 of the Penal Code which forbids the occupying of a room or place for receiving bets and wagers on horse races. The date of the alleged crime was December 22, 1941, when the police called to inspect the room in question. From a judgment of conviction and from an order denying her motion for new trial defendant has appealed. The grounds of appeal are as follows: (1) the insufficiency of the evidence to support the judgment; (2) errors of the court in receiving expert testimony as to the meaning of certain symbols appearing upon documents taken from the room occupied by the defendant.

(1) At the time the officers entered the double residence on Tamarind Street defendant was standing on the back porch. She thereupon promptly departed. In the dining room the officers found a telephone on a shelf which was about eighteen feet from the place where defendant had stood on the porch. Near the telephone on the shelf were found a *Daily Turf Reporter* and a *Metropolitan Scratch Sheet*. For about an hour the officer answered the telephone calls which were requests for the placing of bets on horse races. They came from "Frank," "Mrs. Phillips," "Burr," "Scott," "Kiffy," "Boardman," "Sampson." Two of the parties calling asked for "Leone."

Officer Appel testified that he had been a member of the police department for fourteen years; that he had made about fifty arrests in connection with gambling and bookmaking; that he was familiar with the customs and manners with which bookmakers conducted their business in Los Angeles County; that he was familiar with the papers and paraphernalia commonly used in bookmaking activities; that bookmakers there used a scratch sheet in which are found numbers assigned to particular horses; that such type of scratch sheet is generally used at a phone spot; that the use of numbers facilitates the operations of bookmakers; that the *Metropolitan Scratch Sheet* is commonly at a phone spot for the reason that the results of the races are announced over the radio; that the *scratch sheet* is necessary to use in connection with the *Turf Reporter* which has made the assignments of numbers to the horses. Certain betting markers were identified by Officer Hicks as having been found in the double residence. The numbers on

the betting markers corresponded with those on the *scratch sheet*. Also, he had taken from a desk in the Tamarind house two receipts for rental of those premises in the name of "Mrs. Leona Pruitt," dated respectively October 20, 1941, and December 18, 1941, as further proof of the identity of the occupant of the Tamarind premises during the month of December. The officers identified the cat seen there as the same cat they found when appellant was arrested on January 6, 1942, in apartment 204 at 836 Sanborn Avenue. She then stated to the officers that when she left the Tamarind residence on December 22, she had gone next door to see a friend.

█ The facts established to the satisfaction of the trial court are sufficient to support the judgment. The corpus delicti was established by the following facts:

(1) The presence of the *Daily Turf Reporter*, the *Metropolitan Scratch Sheet*, and the betting markers whose numbers corresponded with those of horses running that day; (2) the numerous telephone calls to place bets on horses in that day's races; (3) the absence of the occupant for more than an hour during which time the telephone calls were numerous. Such facts were amply sufficient to justify the finding that the crime charged had been committed, i.e., the room was occupied for the purpose of bookmaking. (*People* v. *Borrego,* 211 Cal. 759 [297 P. 17]; *People* v. *Smith,* 35 Cal.App.2d 73 [94 P.2d 633]; *People* v. *Roseberry,* 23 Cal.App.2d 13 [71 P.2d 944]; *People* v. *Helt,* 100 Cal.App. 279 [279 P. 1046].)

Merely because from the circumstances in evidence an inference of innocence might have been drawn does not justify the appellate court in reversing a judgment of conviction where the same evidence warrants an inference of guilt. (*People* v. *Martinez,* 20 Cal.App. 343 [128 P. 952].) █ It is not necessary that the corpus delicti be proved by direct and positive evidence. Circumstances may be more convincing. (*People* v. *Spencer,* 58 Cal.App. 197 [208 P. 380].) It is neither the fashion, the custom nor the disposition of violators of penal statutes to choose an audience or the glare of calcium lights as conditions for the commission of their crimes. Of this courts must be ever mindful in considering the crime, the parties involved and the circumstances detailed. (*People* v. *Patello,* 125 Cal.App. 480 [13 P.2d 1068]; *People* v. *Bonilla,* 114 Cal. App. 219, 225 [299 P. 784]; *People* v. *Baker,* 94 Cal.App. 628 [271 P. 765].)

The trial court could reasonably infer that appellant occupied the premises from the following circumstances: (1) her presence at the double residence on the day it was visited by officers; (2) the two telephone calls for her by name; (3) the receipts for rental of the Tamarind residence to Mrs. Leona Pruitt; (4) the presence of the same cat at the double residence on December 22, as that which was found with defendant on the day of her arrest on Sanborn Avenue two weeks later.

Where there is any substantial evidence sufficient to convince fair and impartial men of the existence of a fact the appellate court has no right to set aside the judgment of the trial court. This it may do only when, upon a review of the entire case, it appears that upon no hypothesis whatever is there sufficient substantial evidence to support it. It is the prerogative of the trial court to draw proper inferences and its conclusion will not be disturbed so long as it does no violence to reason. It cannot be over-emphasized that the trial court is the constitutional arbiter of the ultimate facts in issue and the reviewing court cannot substitute its own findings in lieu thereof. (*People* v. *Patello, supra; People* v. *Schneider*, 36 Cal.App.2d 292, 296 [98 P.2d 215].)

■ (2) The second assignment made by appellant is that the court erred in allowing Officer Appel to testify as an expert concerning the papers, books, and paraphernalia commonly used by bookmakers in Los Angeles County and as to the meaning of certain letters and numbers appearing on the *scratch sheet*. The following are the questions and answers of the witness, to which appellant registered the general objection and that it is not the subject of expert testimony:

" By Mr. Thomas: Q. Are you familiar with the signs, symbols, letters and figures used by bookmakers?

"A. I am.

"Q. In Los Angeles County?

"A. Yes.

"Q. What papers, books and paraphernalia are commonly used in Los Angeles County by bookmakers?

"The Witness: Bookmakers in this town, as a rule, use a scratch sheet, one that has numbers assigned to horses, no two horses having the same number. This particular scratch sheet is almost always used on a phone spot, so that the bookmaker may write the number of the horse down instead

of the name, thereby saving time, and as a matter of convenience.

"By Mr. Thomas: Q. How are bets commonly recorded by bookmakers in Los Angeles County?

"The Witness: If the bookmaker is operating a bookmaking phone spot, he records the number or name of the horse; to the side of that amount of money bet on the position which the bettor bets on. The Metropolitan Scratch Sheet is commonly used in phone spot bookmaking places because they receive the results on the radio, and in order to get these results correctly it is necessary for them to have both types of scratch sheets, because the radio gives the number as given in the Metropolitan Scratch Sheet and not in the Reporter Scratch Sheet.

"By Mr. Thomas: Q. I will show you People's Exhibit D for identification. What are these papers commonly called?

"A. Those papers are commonly called betting markers.

"Q. In your opinion, as an expert on bookmaking, what do the numbers appearing upon this first line indicate?

"A. This first bet on the top line, or the number '117' is a number which has been allotted to a horse purportedly running that day on a race track; and the number '59' to the right of that is also a number which has been allotted to a horse. The bet is called a 'parlay' bet. The bettor has bet one dollar to win—one dollar to place. If horse No. 117 wins the total amount is then bet on horse No. 59.

"The next figure beneath that is No. 38, which is also a number which has been assigned to a horse.

"Q. And the name of that horse is what?

"A. No. 38 has been assigned to a horse by the name of Distant Isle running in the second race at Tropical Park. The previous number I have testified to, No. 117, has been assigned to a horse named Rodin. The No. 59 has been assigned to a horse named Old Nick. . . .

"Q. And what information does a scratch sheet contain?

"A. A scratch sheet contains the name of the track, the weather conditions, the condition of the track, the horses listed and post positions; the length of the race, post time—approximate post time of the race—the type of the race that it is, the names of the jockeys; the names of horses which are running in that race and the numbers which have been assigned to those horses by the scratch sheet.

"Q. In your opinion, Officer, as an expert on bookmaking, are the papers marked 'C' and 'D,' racing paraphernalia?

"A. They are."

Appellant contends that under the holding of *People* v. *Davis*, 47 Cal.App.2d 331, 334 [117 P.2d 917] it was prejudicial error for the court to allow the officer to testify what the numbers and figures found on the betting markers indicate. It was evidently the intention of the prosecutor to prove that bookmakers in Los Angeles County use certain combinations of figures and letters to conceal the mysteries of their school. To that end he called officers of long experience in running down bookmakers to explain the nature and character of the papers found in the room occupied by appellant and to state their opinions as to the peculiar significance attaching to the symbols appearing on the betting markers and the scratch sheets. Proof of the character of such documents taken from appellant as well as the significance of the letters and digits unintelligible to the layman appearing on such papers is a part of expert knowledge gained by those who have devoted years to the pursuit of such criminals and to a study of their devices, crafts and methods. (*People* v. *Hinkle*, 64 Cal.App. 375 [221 P. 693].) But because such officers may so testify does not authorize them to assume the role of omniscience and advise the jury as to the thought recorded by means of such symbols on betting markers found in the possession of the accused. Such testimony is speculation and is not admissible for any purpose.

But the evidence of defendant's guilt is sufficient without considering the opinion of the officer as to what the numbers indicate. Upon an examination of the entire cause, we are unable to say that a miscarriage of justice has resulted by permitting an officer to give his opinion as to the meaning of the letters and numbers (Const., art. VI, § 4½). We cannot, therefore, disturb the judgment.

Affirmed.

Wood (W. J.) J., concurred.

McCOMB, J.—I dissent. The majority opinion is contrary to the law as announced by this court in *People* v. *Davis*, 47 Cal.App.2d 331, 334 [117 P.2d 917], in which case the Supreme Court denied a hearing.

The evidence being viewed in the light most favorable to the People (respondent), the essential facts are:

December 22, 1941, Officer Appel of the Los Angeles Police Department went to 1423 Tamarind Avenue, Los Angeles. The premises were described as a "double residence." Defendant was seen standing on the south side of the "double residence." As Officer Appel entered the house, she left the premises. In the house he found a telephone and on a shelf by the telephone there were two papers described as:

(1) "Daily Turf Reporter" dated December 22, 1941, and

(2) "Metropolitan Scratch Sheet" dated December 22, 1941.

Officer Appel for approximately one and one-half hours answered the telephone and received requests for the placing of bets upon horses. At the time of the trial Officer Appel was qualified as being familiar with the customs and manner in which bookmakers conducted their business in Los Angeles County and also as being familiar with the papers and paraphernalia commonly used in bookmaking activities. He was shown People's Exhibit "D," which was the Metropolitan Scratch Sheet dated December 22, 1941, mentioned above and with reference thereto he was questioned and answered as follows:

"By Mr. Thomas: Q. I will show you People's Exhibit D for identification. What are these papers commonly called?

"A. Those papers are commonly called betting markers.

"Q. *In your opinion, as an expert on bookmaking, what do the numbers appearing upon this first line indicate?*

"Mr. A. J. Chotiner: Objected to as not the subject of expert testimony and incompetent, irrelevant and immaterial as to what his opinion may be as to that. That would be calling for hearsay opinion.

"The Court: Objection overruled.

"A. This first bet on the top line, or the number '117' is a number which has been allotted to a horse purportedly running that day on a race track; and the number '59' to the right of that is also a number which has been allotted to a horse. The bet is called a 'parlay' bet. The bettor has bet one dollar to win—one dollar to place. If horse No. 117 wins the total amount is then bet on horse No. 59.

"The next figure beneath that is No. 38, which is also a number which has been assigned to a horse.

"Q. And the name of that horse is what?

"A. No. 38 has been assigned to a horse by the name of Distant Isle running in the second race at Tropical Park. The previous number I have testified to, No. 117, has been assigned to a horse named Rodin. The No. 59 has been assigned to a horse named Old Nick." (Italics added.)

This is the sole question necessary for us to determine:

*Was it prejudicial error for the trial court to permit Officer Appel to give his opinion as to what the numbers appearing upon the "Scratch Sheet" (People's Exhibit "D") indicated?*

This question must be answered in the affirmative. The rule is established in California that testimony of a police officer that numerals and letters on a sheet of paper represent the amounts of a bet, the initials of the bettor, and the horse upon which the bet is placed are inadmissible, since they are pure surmise and merely expressions of a witness on matters not the subject of expert testimony (*People* v. *Davis,* 47 Cal.App. 2d 331, 334 [117 P.2d 917]).

Since there was no admissible evidence as to what the numbers and writing on the scratch sheet found in defendant's house meant, the corpus delicti of the present offense was not established and there was insufficient evidence to sustain a judgment of guilty.

For the foregoing reasons in my opinion the judgment should be reversed and a new trial ordered.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1942.