[Crim. No. 3662.   Second Dist., Div. Two.   Mar. 9, 1943.]

THE PEOPLE, Respondent, v. BENJAMIN BATEMAN, Appellant.

Philip S. Schutz for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

McCOMB, J.—From judgments of guilty of violating section 337a, subdivision 3 of the Penal Code, after trial before the court without a jury, defendant appeals. There is also an appeal from the order denying defendant's motion for a new trial.

The evidence being viewed in the light most favorable to the People (respondent), the essential facts are:

On May 18, 1942, Officer Boswell of the Los Angeles Police Department saw defendant enter a drug store at 300 South Hill Street. Officer Boswell walked to the doorway of the drug store and saw defendant standing before a counter, on the other side of which was the druggist, Max Fisher. The officer saw Mr. Fisher hand defendant some currency and a yellow slip of paper. The currency defendant placed in the right pocket of his shirt and, as the officer walked into the store and defendant saw him, he started to tear up the yellow sheet of paper. Then he handed it to the officer who placed him under arrest. Sixty-two dollars was found in defendant's right shirt pocket.

After qualifying as an expert upon bookmaking activities in the city of Los Angeles, Officer Boswell, identified the yellow slip of paper as a ''betting marker'' used by bookmakers in the city of Los Angeles. He further testified that. names on the betting marker such as ''Red Weatherly,'' ''The ''Finest,'' and ''Saving Grace'' were names of horses that were racing on various tracks in the United States on the day defendant was arrested. He also testified that the characters ''5-b,'' ''P,'' and ''1-10'' appearing below the words ''The Finest'' indicated that the horse named ''The Finest'' was to run in the first race at the Belmont race track, and that the amount of the bet was a one dollar insured place wager. He also testified that a horse named ''The Finest'' was in fact running in the first race at the Belmont Park race track on May 18, 1942.

On the way to the police station Mr. Fisher was shown the betting marker he had handed to defendant and in the presence of defendant was asked what the notations indicated, to which he replied that they indicated horses and races. He was also asked how long he had been placing bets with defendant, to which he replied, ''Several days.''

Defendant was then asked by the police officer what his employer who owned the parking lot where defendant was employed would do if he knew defendant was out taking bets, to which defendant replied, ''He would probably 'can' me.''

Defendant urges reversal of the judgment on two propositions which will be stated and answered hereunder seriatim.

■ *First: Independent of the inferences to be drawn from defendant's conduct when confronted with accusatory statements of the police officer on the way to the police sta-*

*tion, there is no substantial evidence to prove the corpus delicti of the crimes of which defendant was convicted.*

This proposition is untenable, in view of the decisions in *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Kahn,* 27 Cal.App.2d 645 [81 P.2d 632] ; *People* v. *Miropol,* 33 Cal.App.2d 297, 298 [91 P.2d 230] ; and *People* v. *Abraham,* 53 Cal.App.2d 564 [128 P.2d 39]. In the cases cited the evidence was no stronger than in the instant case. Nevertheless, the convictions were sustained in the first case by our Supreme Court and in the others by this court.

From the record it appears that defendant received from Mr. Fisher money and a piece of paper commonly denominated a "betting marker," frequently used by those engaged in "bookmaking" activities in the county of Los Angeles. From this evidence the trial judge under the decisions above cited was justified in drawing the inference that the essential elements were present to constitute a violation of section 337a, subdivisions 1 and 3 of the Penal Code.

*Second: The trial court committed prejudicial error in permitting Officer Boswell to testify that the yellow slip of paper defendant received from Mr. Fisher was a betting marker, and as to the significance of the letters and figures appearing thereon.*

This proposition is untenable. The law is established in California that the testimony of a duly qualified expert, such as Officer Boswell, is admissible to explain the significance of cryptic letters and figures which appear upon papers, books, and paraphernalia customarily used by bookmakers (*People* v. *Hinkle,* 64 Cal.App. 375, 378 [221 P. 693] ; see also *People* v. *Pruitt,* (1942) 55 Cal.App.2d 272, 277 [130 P.2d 767]).

In view of the fact that our Supreme Court has denied a hearing in the last cited case any statements contained in *People* v. *Davis,* (1941) 47 Cal.App.2d 331, 334 [117 P.2d 917], contrary to the rule of law above stated must be deemed to have been overruled. It is an established rule of law that a later decision overrules prior decisions which conflict with it, whether such prior decisions are mentioned and commented upon or not (*Asher* v. *Texas,* 128 U.S. 129, 131 [9 S.Ct. 1, 32 L.Ed. 368] ; *Kenney* v. *Antioch L. O. School Dist.,* 18 Cal. App.2d, 226, 231 [63 P.2d 1143] ; *Outer Harbor D. & W. Co.* v. *Los Angeles,* 49 Cal.App. 120, 124 [193 P. 137] ; *Palvutzian* v. *Terkanian,* 47 Cal.App. 47, 52 [190 P. 503]).

For the foregoing reasons the judgment and order are and each is affirmed.

MOORE, P. J.—I concur. The record discloses that Officer Boswell qualified as an expert in the methods and practices of bookmakers in Los Angeles County by having testified in 175 cases and by having made a study as to the methods of such bookmakers. All of his testimony relative to documents was as to their meaning when translated into intelligent idiom from the ''common parlance'' of the bookmaker and interpreted in the light of ''common usage'' of the bookmaker's world. It was after he had qualified and while in the course of giving such testimony that he stated the meaning of certain digits, letters and words found on the betting marker. He did not in any instance declare what he thought they meant or what he thought they should mean. His testimony was emphatic to the effect only that the symbols appearing on the exhibit were taken from the parlance of the bookmaker and that they have the significance he ascribed to them in ordinary English. In such view his testimony came within the rule of the Pruitt case (55 Cal.App.2d 272 [130 P.2d 767]) and the Hinkle case (64 Cal.App. 375 [221 P. 693]) and was competent proof.

By concurring with the statement that the Davis case decided by this court in October 1941 must be deemed to have been overruled by the denial of a hearing in the Pruitt case, decided by this court in October, 1942, I do not mean to hold that every denial of a hearing by the Supreme Court of a case decided by us contrary to another decision of a District Court of Appeal necessarily signifies an overruling of the older decision. However, upon a more mature consideration of the two opinions it is clear that they hold adversely upon two sets of facts identical in respect to the rulings upon the testimony of experts, and therefore the denial of hearing in the Pruitt case must be construed as a disapproval of the Davis decision. In both cases the prosecution called to the stand officers who qualified by their police experience in the pursuit of such criminals, and by their familiarity with the parlance and the usages, devices and methods common to the bookmakers' paradise. In each case the officer testified to the meaning of no word or symbol appearing upon the exhibit under consideration before he had first qualified as an expert by his knowledge of the bookmaking craft in Los Angeles County. The only

differences between the opinions in the two cases are (1) that in the Davis case the court considered the officer's interpretation of the symbols found on the exhibit, apart from his qualification as an expert, while in the Pruitt case we considered the opinions of the witness as those of an expert who knew the meaning of the "letters and digits unintelligible to the layman." (2) Whereas the Davis case was reversed on account of the rulings with respect to the officer's testimony, in the Pruitt case, after announcing the rules which made the officer's testimony proper, we impliedly approved of the Davis decision by denying a reversal by virtue of article VI, section $4\frac{1}{2}$ of the Constitution. We should have omitted reference to the Constitution. There was no error in the court's ruling. If the expert's testimony was competent in the Pruitt case, as we held it to be, then under the cited authority of *People* v. *Hinkle,* it was likewise competent in the Davis case. If it had been improperly received in the Pruitt case, surely the Supreme Court would not have permitted the Pruitt decision to stand against a challenge based upon the Davis holding, unless its intention was to indicate a disapproval of the Davis decision. The two held adversely.

The invocation of section $4\frac{1}{2}$ in the Pruitt opinion was unfortunate; also it was unnecessary. If the testimony of the officers who took the stand against Pruitt had been inadmissible there would have been a hiatus in the proof, in which event there could have been no conviction. Therefore, the judgment should have been affirmed solely upon the principle that "letters and digits unintelligible to the layman" is a part of "the expert knowledge gained by those who have devoted years to the pursuit of criminals and to a study of their devices, crafts and methods" (*People* v. *Pruitt, supra*).

WOOD (W. J.), J.—I concur in the judgment of affirmance. The Supreme Court denied applications for hearings in both *People* v. *Davis,* 47 Cal.App.2d 331 [117 P.2d 917] and *People* v. *Pruitt,* 55 Cal.App.2d 272 [130 P.2d 767]. The fact that the denial of a hearing in the Pruitt case was at a date later than the denial of a hearing in the Davis case does not establish the rule that any statements in the Davis opinion which may be contrary to the ruling in the Pruitt case must be deemed to have been overruled. In my opinion, however, there is no occasion to pass upon the effect upon the

Davis case of the later denial of a hearing in the Pruitt case, for there is no inconsistency in the rulings of the two cases. The crux of the opinion in the Davis case is found in the following notation from the opinion: "From the foregoing it will be noted that the officer was not asked as to the custom or manner in which alleged bookmakers operated, but was permitted to testify to the meaning of certain numerals and letters. This testimony, in the form here presented, should not have been admitted." In the Pruitt case we held: "But because such officers may so testify does not authorize them to assume the role of omniscience and advise the jury as to the thought recorded by means of such symbols on betting markers found in the possession of the accused. Such testimony is speculation and is not admissible for any purpose." The judgment of the lower court in the Davis case was reversed because of the error in the admission of testimony but in the Pruitt case the judgment was affirmed because there had been no miscarriage of justice as that term is used in article VI, section 4½ of the Constitution of California.

In the present case the police officer who was sworn as an expert witness based his testimony concerning the paper found in the possession of defendant upon the usage and custom of bookmakers in Los Angeles. He described the paper as a "betting marker" and stated that in common practice it was used by bookmakers to record wagers. Referring to certain letters and figures on the paper the prosecutor asked the witness, "Now in common usage what do they indicate with respect to bookmaking activities?" An objection was made by defendant and the prosecutor explained: "My question doesn't contemplate the meaning of these particular figures. I am asking him what in common parlance in bookmaking activities generally such a figure means." The question was permitted. The answer given by the witness clearly referred to the significance of the lists and figures in bookmaking activities generally. The court evidently was taking pains to avoid the error of the Davis case, for after some further testimony by the witness the record discloses the following question by the court: "You base your testimony not on this particular memoranda and the marks thereon, but on the customs and usages incident to the bookmaking fraternity in this community or vicinity, as to the manner in which they generally conduct their business?" The witness answered in

the affirmative. It is apparent from the foregoing that the court did not err in admitting the testimony of the officer. (*People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693].)