**UNITED STATES of America, Appellee,**

v.

**Eduardo BORRONE-IGLAR et al., Appellants.**

**Nos. 878–881, 899, Dockets 72–1335, 72–1336, 72–1432, 72–1440, 72–1519, 72–1529.**

United States Court of Appeals, Second Circuit.

Argued July 17, 1972.

Decided Oct. 4, 1972.

---

**420**

---

H. Elliot Wales, New York City, for appellant Joseph Gernie.

Peter R. Schlam, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., for Eastern District of New York, David G. Trager, Asst. U. S. Atty., on the brief), for appellee.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

## PER CURIAM:

Appellant Joseph Gernie is one of several defendants [1] convicted in connection with the smuggling of 21 kilograms of cocaine on September 6–7, 1970, and 40 kilograms on November 5–6, 1970, into the United States by way of the Chilean ship "Maipo," with the use of skin divers between a Brooklyn pier and the ship, followed by sale and resale. Appellant specifically was convicted of conspiracy to smuggle and traffic in cocaine, contrary to 21 U.S.C. §§ 173, 174, and was sentenced to 15 years' imprisonment and a $20,000 fine. Appellant's alleged role in the conspiracy was as a major customer of the Hernandez brothers, who were the initial American purchasers of the smuggled cocaine.

Appellant's principal point is that the trial court erred in permitting an in-court voice identification of him by New York City Detective Frank Cruet, who was monitoring defendant Enrique Hernandez' telephone pursuant to a state court order. Appellant also urges that it was error to permit the detective to give his interpretation of the argot used in the Hernandez-Gernie telephone conversations; that there was insufficient evidence as a matter of law to establish appellant as a member of the conspiracy; and that the trial court erred in reserving decision on a motion for judgment of acquittal until the day of sentencing.

We take up the telephone tap question first. The three conversations in question were on September 28, October 13, and October 29, 1970. At the time of these calls Detective Cruet had not met appellant. He claimed on a voir dire examination, however, to have heard Gernie's voice in "[s]ubsequent conversations, other conversations." He

---

1. The appeal of appellant Borrone-Iglar was dismissed on motion; as to the other appellants the judgments were affirmed in open court, 462 F.2d 574.

also met appellant, although it was after the three telephone conversations in question; while we do not know the circumstances of the meeting, it is a little difficult to imagine how two people can meet with one not talking. Cruet recalled specifically one telephone call placed by Enrique Hernandez to a club in Manhattan in which "he asks for the person, Joe Gernie, and Joe Gernie gets on the phone." The court overruled appellant's objections that no foundation for the voice identification had been laid and specifically asked Detective Cruet, "Do you recognize the defendant Joe Gernie's voice as the voice that you have marked 'Joe' or 'Joe Gernie' on [Government Exhibit] 18 for identification," to which an affirmative reply was received. The court left it to the jury to determine the witness's credibility.

While the foundation was weak, a voice can be identified through subsequent acquaintanceship with it, which Cruet professed to have through a "meeting" and other tapped calls, including one specifically asking for Gernie by name.[2] Weighing the testimony was a job for the jury. *See generally* NLRB v. Carpet, etc. Layers Local 419, 213 F. 2d 49, 52 (10th Cir. 1954).[3]

■ It was proper to permit Detective Cruet to testify concerning the narcotics vernacular[4] used in the telephone conversations. The objection was not that the officer was unqualified by lack of experience or objectivity to give an opinion, but that opinion testimony should not be received on the meaning of words used in the conversations. This objection is unavailing. *See* People v. Bateman, 57 Cal.App.2d 585, 135 P.2d 192 (1943) ("the testimony of a duly qualified expert . . . is admissible to explain the significance of cryptic letters and figures which appear upon papers, books, and paraphernalia customarily used by bookmakers"); Dwares v. Clifton Yarn Mills, 65 R.I. 471, 16 A.2d 501, 505 (1940); 7 J. Wigmore, Evidence § 1955 (3rd ed. 1940).

■ With the conversations in evidence and the interpretation of them by the narcotics detective admissible, there is sufficient evidence of Gernie's participation in the smuggling of November 5–6, as a purchaser from Enrique Hernandez, to justify his conviction, without detailing the conversations under which news of the "Maipo's" pending arrival with the contraband was related to Gernie, whom Enrique Hernandez told was "the first one" that he would call.

■■ Finally, Gernie contends that the trial judge improperly reserved decision on Gernie's various motions for judgment of acquittal. The first of these was made at the end of the Government's case. While ruling on the motion promptly would have been the "better practice," the judge's failure to do so was not reversible error in view of Ger-

2. At argument the court was furnished copies of the transcript of tapped conversations in evidence, but this call was not one of them.

3. Even if there were error in the original admission of the in-court voice identification, however, it could be argued that the error was cured by subsequent evidence at trial. In the questioned conversation of October 29, 1970, Enrique Hernandez asked the person whom Cruet testified he recognized as Gernie to get Enrique Hernandez' nephew a job, and Gernie said, "Alright [sic]. We'll work on it this week." The defense subsequently called the nephew, who verified that Gernie had obtained a job for him, seeking thereby to establish the telephone conversation as innocent but substantiating its authenticity and the accuracy of Cruet's identification. *Cf.* United States v. Volkell, 251 F.2d 333, 337 (2d Cir.), cert. denied, 356 U.S. 962, 78 S.Ct. 1000, 2 L.Ed.2d 1068 (1958); Skiskowski v. United States, 81 U.S.App.D.C. 274, 158 F.2d 177, 180–182 (1946), cert. denied, 330 U.S. 822, 67 S.Ct. 767, 91 L.Ed. 1273 (1947). *But cf.* United States v. Modern Reed & Rattan Co., 159 F.2d 656 (2d Cir.), cert. denied, 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845 (1947).

4. *E. g.*, "I'm supposed to have twenty, twenty cents coming off," means, according to Detective Cruet, that the speaker (Enrique Hernandez) was supposed to be getting 20 kilos of narcotics.

nie's subsequent introduction of evidence. *See* United States v. Brown, 456 F.2d 293 (2d Cir.), cert. denied, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972). *But see* Sullivan v. United States, 414 F.2d 714, 715 (9th Cir. 1969). As to the motions made at the close of all the evidence and after verdict, the judge was plainly entitled to reserve decision under Fed.R.Crim.P. 29(b) and (c). What this court suggested was bad procedure in United States v. Fincke, 437 F.2d 856, 862 (2d Cir.), cert. denied, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971), was withholding decision until after summation and then granting the motion as to one defendant, in view of the possibility that had the motion been granted before argument the summations of the other defendants might have been different. Here there was clearly no prejudice.

Judgment affirmed.