[Crim. No. 5054. Second Dist., Div. Two. Dec. 8, 1953.]

THE PEOPLE, Respondent, v. GEORGE E. OSTER, Appellant.

George E. Oster, in pro. per., and Albert C. S. Ramsey, for Appellant.

Edmund G. Brown, Attorney General, Norman H. Sokolow, Deputy Attorney General, for Respondent.

MOORE, P. J.—About 11 o'clock in the evening of February 1, 1953, the prosecutrix, J. W., age 17, walked westward on the sidewalk of 23d Street in Long Beach, carrying her shoes in her hand. She had just left a theater and was within a half block of her home. A cream colored automobile drove alongside her and parked at the curb. Its driver followed the young lady until she turned and looked at him. He grabbed her by putting his hand around her mouth and pulled her down onto the adjoining lawn. As he lay on top of her with one arm under her he told her not to yell. She jerked her head away and "told him to stop it." ▋ He told her he was going to "have" her and offered her his watch and ring and placed his hand on her leg. She managed to rise to her feet but he threw her to the ground again and told her he would cut her throat if he had a knife. As they struggled he declared he "was going to have" her and touched her private parts beneath her garments. She then told him she would go with him to his car which he had repeatedly demanded. On the way she became hysterical, began to cry and ran to a neighboring house, knocked and related her experience to the master, the witness Haaland. In five minutes the police were there. They captured the miscreant, retrieved gloves, purse and one shoe and returned to the Haaland home where she recognized appellant as her assailant.

But another chapter in the career of this unfortunate man preceded his bestial experience on 23d Street. A few minutes before he overtook J. W. he had entered the automobile of Mrs. Hill parked in front of a café on Santa Fe Street. He found that he could start it "by merely flipping the key or the lever and stepping on the starter." He took it away without Mrs. Hill's consent and immediately drove to 23d Street where he struggled with J. W. and was apprehended by the police.

He was duly accused by the district attorney, count I, with assault with intent to commit rape by means of force and violence; count II, grand theft, by taking Mrs. Hill's car; count III, violating section 503 of the Vehicle Code in that he drove Mrs. Hill's automobile in her absence and without her consent, with intent to deprive her of its title and possession. After trial by a jury he was found guilty under counts I and III, and acquitted on count II. His motion for a new trial and his application for probation having been denied, this appeal was lodged from the judgment of conviction.

The grounds urged for reversal are: (1) the evidence was insufficient to sustain the judgment; (2) he suffered double jeopardy; (3) the "complaint is outlawed by the statutes of limitation."

### The Evidence Is Sufficient

The testimony of Miss J. W. alone when believed by the jury is ample support for the verdict. (*People* v. *Nye,* 38 Cal.2d 34, 37 [237 P.2d 1]; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) She saw him at the time of the attack; she saw him again in the police car about five minutes after she escaped from him. No doubt is left of his identity in view of subsequent events. That he attempted to commit rape is established not only by the testimony of the prosecutrix but by her midnight appearance, crying and beating the door of the Haaland home, and the complaint to the Haalands, who called the police. The officers recovered from appellant the young lady's belongings which he had carried to the car. The officers discovered the cream-colored convertible, which had been reported stolen, while on the way to answer Haalands' call and found appellant crouched down in its front seat peering over his shoulder at the officer. He was forced to leave the car under threat to shoot, said he had been picked up by a girl and was waiting for her. On the morning of February 2, appellant signed a writing for Inspector Dyer in which he declared that he had visited a theater and a café and while waiting at the bus stop "the girl" drove by and at his request took him in; that when he "made a play for her" she at first "shied away" but later agreed that she should expect it; that when she parked the car she left her purse and gloves. Later on the same day he told Inspector Sullans and the stenographer that he had gone to a bar on 16th Street; had seen "this convertible car" open and he entered it and started with "the switch," the ignition being unlocked; saw "this girl" on 24th Street for the first time;

he intended "to try to pick her up" to have intercourse with her; that when he saw the girl walking on 24th Street he walked up to her; put his arms around her, put his hands over her mouth and said he would like to make a date with her, "would like to have a little fun with her"; he "didn't throw her down on the grass"; he held her shoulders and rubbed down her back "outside her dress" trying to induce her to have intercourse. He denied saying, "I will cut your throat."

On the following day he made substantially the same statement to Inspector Dyer and Deputy District Attorney Cochran but in their conversation he admitted that after he parked the convertible he walked up behind Miss J. W. and grabbed her.

### No Double Jeopardy

■ Appellant has emblazoned the 38 pages of his briefs with ill-tempered, rash and ill-considered utterances, demanding that he be granted a pardon. He says he was "arrested for three charges, unlawfully inflicted against him for one transaction"; was "unlawfully bound over for the same three independent indictments; still unlawfully under double jeopardy doomed helpless in his tracks"; "how could the district attorney mislead the court and try him and sentence him for two independent indictments based upon stealing the same automobile?" "Place him in peril of double jeopardy for two independent inflicted indictments based upon stealing the same automobile"; "that any attacks against him for three independent indictments, all happened at the same identical time"; "the State can't split one crime and prosecute in parts for two independent inflicted indictments based upon the same transaction of the same offense," etc.

Appellant did not suffer double jeopardy. The accusations were lawfully drawn in one document. ■ If a person has committed one hundred felonies of different varieties, all may be contained in one pleading so long as each is declared in a separate count. For instance, a person may be accused in one information of a felonious sex crime, and in separate counts he may be charged with grand theft, arson, and murder. If the prosecutor chooses to charge one of the offenses by a different statement, he may do so with safety. (Pen. Code, § 954.)

■ When a certain defendant is charged in count II under one statute and is accused under count III with different language but refers to the same transaction referred to in

count II he may be punished under either of such counts, but not under both of them. (Pen. Code, § 654; *People* v. *Kehoe,* 33 Cal.2d 711, 714 [204 P.2d 321].)  In other words, when the act of the accused is charged twice in seperate counts, he can be found guilty under only one of those counts.

### No LIMITATION INVOLVED

There is no question of limitations involved in this action.  The crimes charged to appellant were committed on February 1, 1953.  The information was filed February 20, 1953.  The district attorney could have filed it any time within three years after the offenses were committed.

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 6, 1954.