[Crim. No. 5123.   Second Dist., Div. One.   May 3, 1954.]

THE PEOPLE, Respondent, v. JOHN MICHAEL PAPS, Appellant.

Paul Leiter and Watson G. Thoms for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County defendant was charged in Count I with the crime of engaging in bookmaking upon the result of a horse race, in violation of subdivision I, section 337a, of the Penal Code.   In Count II he was charged with the offense of accepting a bet or wager upon the result of a horse race, in violation of subdivision VI, section 337a, of the Penal Code.

Following the entry of not guilty pleas to each count of the information, and appropriate waiver of trial by jury, the cause proceeded to trial before the court, resulting in

a decision adjudging defendant guilty as charged in both counts. Motion for a new trial was made and denied. Defendant was sentenced to serve a term of one year in the county jail on each of the two counts, execution of the sentence was suspended and he was placed on probation for three years on condition that he serve 30 days in the county jail on each count, said jail terms to run concurrently.

From the judgment of conviction and from the order denying his motion for a new trial defendant prosecutes this appeal.

We consider the following a fair epitome of the factual background surrounding this prosecution as revealed by the record herein.

On the 12th day of March, 1953, at about 12 o'clock noon, Vernon Moen, a Los Angeles city police officer, accompanied by an unidentified woman companion, entered the Studio Café, owned and operated by defendant on Santa Monica Boulevard, in the city of Los Angeles. The café contains a bar approximately 25 feet in length with a number of stools in front of it. On the opposite side of the café there are three or four booths. As one enters the premises, the bar is to the left and the booths are on the right. On a wall in the rear and near the right hand corner is a pay telephone. Just to the side of the wall phone is a door opening into defendant's office.

Upon entering the café Officer Moen and his companion went directly to the booth nearest the front door and ordered a meal which was served them by defendant's daughter. As he came into the café the officer observed defendant conversing with patrons on the customers' side of the bar, noticed defendant take currency from a couple of them and walk back to his office. A lady, identified at the trial as Mrs. Grant, entered the café, seated herself in the booth next to that occupied by the police officer and engaged defendant in conversation. She handed him a white piece of paper and some currency. Defendant left and returned shortly with some money which he handed to Mrs. Grant. The officer was unable to describe the piece of paper nor the denomination of the currency.

Shortly thereafter the officer and his companion were served with food and some beer, and they spilled a glass of the latter on the table. Defendant wiped it up and Officer Moen went to the rear of the café to the wall phone to call

the police station. While at the phone he observed three men in the rear booth studying a scratch sheet and the racing section of a daily newspaper. Each of these three men then wrote down the name of a horse and the amount of the bet on little pieces of green paper. The scratch sheet was given to these men by defendant. Two of them handed their pieces of green paper to the third man, who arose, entered the office and had a conversation with defendant. This man handed defendant some currency which he put in his front pants' pocket. Officer Moen then hung up the phone, walked directly into the office, recovered the green betting markers which were on the desk in front of defendant, and placed him under arrest. Officer Moen never lost sight of the markers from the time he first saw them on the table in the rear booth until he took possession of them on the desk in the office in front of defendant.

Officer Moen then ordered defendant to empty his pockets, and he removed approximately $480. The man who delivered the money and green betting markers to the defendant at the time Mr. Moen entered the office immediately left the room.

While Officer Moen was standing with defendant in the office, another person entered the room and offered the latter some paper money which was rolled up. Officer Moen took it, opened the money up and found a marker with the name of a horse, "Bigun," on it. When the money was presented to defendant he drew back and asked, "Well, what is that?" The man said, "What do you mean, what is that?" and defendant answered, "Well, I don't know what it is."

Officer Moen recovered a scratch sheet known as the "National Daily Reporter," dated Thursday, March 4, 1953, from a beer case in the back room near the desk. The officer testified he saw the defendant put it there.

Officer Moen and his partner Officer Jenkins had a conversation with defendant on the way to the police station. Defendant said, "Can't we talk this thing over, because I just got off probation for bookmaking, in July, and this will ruin me."

Officer Moen also testified, "I asked the defendant how he was handling his action, or how he was doing it, and he stated that he worked on five per cent on losing weeks, whereas he would get fifty per cent on winning weeks, and he worked for a person by the name of 'Sal,' who worked at 20th Century Fox. He further stated, 'Sal comes by the

bar during the day and picks up the action.' The defendant stated, 'I know you have got me good, but, actually, this $480 I have in my possession is money I use to cash checks in my business.' ''

On behalf of defendant it was shown in evidence that upon arrival at the police station there was included in his possessions a check for $5.00, made out to cash. Defendant testified that this check was the paper handed him by Mrs. Grant and which he cashed for her. That the currency returned to her was the amount due after deducting the cost of her lunch.

Jesse Blazek, a bartender employed by defendant, testified that while he was engaged in mopping up the spilled beer on the table in the booth occupied by the officer, one of the other customers approached him to pay a lunch check and was directed by the witness to go to the office and pay defendant.

As a witness in his own behalf, defendant testified that he knew the arresting officer, Vernon Moen, by sight, having previously seen him at Hollywood police station, a few months prior to the arrest. Seeing three men in the last booth, scribbling bets on green pieces of paper, he told them to "cut it out" because there was an officer present and he didn't want any trouble. That he then went into his office and called his butcher to order the next day's meat supply. While seated at the desk and talking at the phone, the heretofore referred to man, "Sal," entered the office, reached in his pocket and took out a $20 bill and handed it to him. That he told "Sal" to forget it and to come back the next day because he wanted him to get out of his place. "Sal" left, and then the officer walked in and asked the defendant to empty his pockets and also for the bet he was supposed to have taken from the lady in the booth. Defendant testified he told Officer Moen that the man he wanted was "Sal" and that "Sal" had just left; and if he hurried, he could catch him. The officer admitted this conversation took place and that he did not attempt to follow or take the man who left into custody. The defendant testified that he did not take any bets from anyone, and made no notations of horses or bets.

With reference to the conversation testified to by Officer Moen as having taken place en route to the police station, defendant testified that after leaving Hollywood police station for Lincoln Heights station, Officer Moen said to him,

"Well . . . it looks like we got you pretty good." That in reply defendant said, "Look, Officer, I don't know why you guys keep rousting me around this way." That the officer inquired, "How is business?" Defendant testified that thinking the inquiry was directed to his café business, he answered that, "I have worked six months trying to build that place up, and you guys have come around and rousted me around three times. You have never found any evidence. . . . I do not see why you guys do not give me a break."

Defendant further testified that Officer Moen laughed and asked, "How are you doing on the books?" That defendant replied, "I am not doing any books." That the officer then said, "How do they operate now, the bookmakers?" Defendant testified that to this question he replied, "I don't know. When I did book we were getting five per cent and 50 per cent." Defendant testified that the foregoing was all of the conversation, and that at no time did he say that he was working for "Sal," or any other bookmaker on a percentage basis.

Appellant's sole ground for a reversal of the judgment and order herein is that the evidence is insufficient to sustain a conviction on either count of the information.

In considering this contention, appellate tribunals are governed by well-defined principles of law. At the outset, on appeal in a criminal case following a conviction, the evidence must be considered in the light most favorable to the prosecution. The reason for this rule is that an appellate court is not authorized to retry the cause. We are not warranted in attempting to determine the weight of the evidence or the credibility of witnesses. This court is restricted to a decision only as to whether upon the face of the evidence it can justly be held that sufficient facts could not have been found by the duly constituted arbiter of the facts to warrant the inference of guilt. Only where it is made clearly to appear that upon no hypothesis whatever is there evidence of sufficient substantiality to support the conclusion reached in the trial court, may we disturb the finding of the trier of facts. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Kristy*, 111 Cal.App.2d 695, 698 [245 P.2d 547].)

When the evidence in the instant case is reviewed in the light of the foregoing rules, we are persuaded that appellant's contention as to its insufficiency to support the judgment cannot be sustained.

We have hereinbefore set out in considerable detail the evidence adduced at the trial and it is unnecessary to here repeat it. Suffice it to say that prior to the admission of appellant's extrajudicial statements into evidence the corpus delicti was established by ample evidence. ▉ In proving the corpus delicti it is not required that the proof be as clear and convincing as that required to establish the fact of guilt, but rather slight or prima facie proof is sufficient for such purposes (*People* v. *Mehaffey,* 32 Cal.2d 535, 545 [197 P.2d 12]; *People* v. *Grimes,* 91 Cal.App.2d 629, 631, 632 [20 P.2d 416]).

With reference to appellant's contention as to the existence of inconsistencies in the testimony of Officer Moen, it might be said that rarely does it happen that a case is presented on appeal in which some inconsistencies in the testimony of certain witnesses may not be discovered.

So far as the instant case is concerned, we might observe that while the alleged variances or inconsistencies claimed in the testimony given by Officer Moen at the preliminary examination and that given at the trial afforded opportunity for a persuasive argument to the trier of facts against the reliability of the officer's testimony, we see in them nothing from which a reviewing court could justly conclude that the officer's entire testimony is *per se,* unbelievable, and that it was therefore the duty of the trial judge not only to wholly disregard it, but to accept the defendant's story, or at least find that the latter's guilt had not been disclosed by the evidence to a moral certainty and beyond a reasonable doubt.

Having in mind the foregoing evidence in the case now engaging our attention, it would challenge credulity and do violence to reason to say that sufficient facts could not have been found from the evidence by the trial judge to warrant an inference of guilt.

For the foregoing reasons, the judgment and the order from which this appeal was taken are, and each is, affirmed.

Doran, J., and Drapeau, J., concurred.