[Crim. No. 2541.   Third Dist.   Jan. 24, 1955.]

THE PEOPLE, Respondent, v. GLEN C. RIDER, Appellant.

Milton L. Baldwin, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

PEEK, J.—This is an appeal from only that portion of the judgment finding the degree of the crime to have been murder of the first degree.

Defendant was charged by way of indictment with the crime of murder.   He was arraigned and entered a plea of

not guilty of the crime charged. Thereafter he was re-arraigned and entered an additional plea of not guilty by reason of insanity which latter plea was subsequently with-drawn. The matter proceeded to trial by the court sitting with a jury which returned a verdict of guilty of murder in the first degree and fixed the punishment at life imprison-ment. Appellant's sole contention is that the evidence viewed as a whole is insufficient to sustain the judgment of first degree murder.

In view of the nature of defendant's contention, it becomes necessary to discuss in detail only that portion of the evidence relating to the facts and circumstances relied upon by the prosecution to establish that the murder was committed in the perpetration of a robbery. Present counsel for defendant did not represent him at the trial but was appointed for the purpose of this appeal. Although he has ably and with obvious diligence discussed the evidence at length, such a discussion would more properly be directed to a jury than to a reviewing court.

This court is, at the outset, confronted with the first rule of review—that we must " 'assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence' " (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]), and if the evidence, when viewed by such rule, proves sufficient, it necessarily follows that the judgment must be sustained.

The record shows that defendant was badly in need of money. On the morning of December 1, 1953, he pawned his watch for $3.00 and obtained some gasoline on credit. Shortly after noon on that day, he went to an auto wrecking establishment in North Sacramento and there borrowed a hack saw with which he sawed off the barrels of a shotgun. He testified this was to remove a dent in the barrels; how-ever, he sawed them off more than eight inches from the point of damage, thereby unnecessarily shortening the barrels. Thereafter he drove to a point near Sacramento where he fired the gun several times to see if it was functioning properly.

Just prior to December 1, 1953, defendant had been con-tacted on numerous occasions by a Mr. Walton who demanded that he make good that day on several checks which had been cashed by Mr. Walton, and which had been returned because of insufficient funds. Walton had informed defendant that unless he complied with such demands, he (Walton) was

going to the district attorney. At approximately 1:30 p. m. that day defendant telephoned Mr. Walton and told him that he would ''pick those checks up'' that evening and asked that he withhold such action.

About 2:30 p. m. defendant drove to decedent's grocery store, parked his car parallel to the roadway, left the motor running, left the door on the driver's side ajar, and went into the grocery store carrying the sawed-off shotgun. When defendant first entered the store Mr. Hall was busy waiting on a customer, a Mr. Pearce. Defendant approached another customer, a Mr. Mobley, and unsuccessfully endeavored to sell the shotgun to him. A third customer, aware of these facts, made a note of the license number of defendant's automobile. There were no witnesses to the actual firing of the shotgun. The witness Mobley, however, upon hearing the shot turned quickly and observed defendant taking the gun down from his shoulder. The shot caused Hall's death almost immediately. Defendant then hurried from the store, jumped into his car and drove off. Upon leaving the store he brushed past Mrs. Hall, who also had been attracted by the report of the gun, and attempted to conceal his face with his coat.

Defendant was apprehended about midnight at the home of a friend. He first denied any connection with the slaying; however, in a later confession he admitted the slaying but contended that he was temporarily insane. Subsequent to the killing Mrs. Hall discovered that $177.06 in cash was missing from a box kept on a shelf under the cash register. Although the defendant when testifying in his own behalf denied any attempt to rob and stated the gun was fired by accident, such testimony only created a conflict in the evidence which was for the jury to resolve.

█ The evidence as to the element of robbery was circumstantial; nevertheless it was such that the jury could have reasonably inferred that the murder occurred during an attempt to commit robbery; that defendant, motivated by a need for money, had sawed off the barrels to better conceal the gun; that he then went to Hall's grocery store with the intent to get the needed funds by one means or another; that, being unable to sell the shotgun, he used the only other alternative; and, that he then fled in his car. His attempt to conceal his face, his attempt to hide the murder weapon, his reticence in giving himself up to the sheriff's officers and his

attempt to dispose of the gun all indicated a consciousness of guilt.

In view of the evidence summarized and the reasonable inferences which it could draw therefrom, the jury could properly find the killing to have been "committed in the perpetration or attempt to perpetrate . . . robbery" and hence to have been "murder of the first degree." (Pen. Code, § 189.)

Defendant, incidentally, but in support of his main contention, argues that the trial court erred in giving an instruction defining the crime of robbery. Rather, he says, the trial court should have given an instruction on negligent homicide. As previously noted, in view of the evidence as summarized herein, the propriety of the instruction as given by the court cannot be challenged.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 23, 1955.