[Crim. No. 5301.   Second Dist., Div. Two.   Apr. 28, 1955.]

THE PEOPLE, Respondent, v. CLARENCE EDWARD KENT, Appellant.

Samuel Houston Allen for Appellant.

Edmund G. Brown, Attorney General, and Delbert E. Wong, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of manslaughter after trial before a jury, defendant appeals.   There is also an appeal from the order denying his motion for a new trial. *Questions*: First: *Was there substantial evidence to sustain a judgment of guilty of the crime of manslaughter?*

*Yes.*   Manslaughter is the unlawful killing of a human being without malice, if done upon a sudden quarrel or heat of passion.   (Pen. Code, § 192, subd. 1.)

The record discloses the following:

Herbert Singhofen and defendant had been close personal friends for approximately 20 years.   Defendant, who was an alcoholic, had for a long time been a drinking partner of Mr. Singhofen.   For several days prior to June 17, 1954, Mr.

Singhofen had been drinking at his home, and during this time defendant had called upon him on several occasions. On one of these occasions, Mr. Singhofen had given defendant his passbook on a nearby savings bank and defendant had withdrawn $100 therefrom, which he had divided with Mr. Singhofen.

Thereafter defendant returned to his hotel room which was located several blocks from his friend's residence. During the next several days defendant went to the race track where he won considerable money. On the evening of Thursday, June 17, he had approximately $160 on his person at which time he went to Mr. Singhofen's residence and found him in bad shape due to his drinking and failure to eat. Defendant brought Mr. Singhofen to his [defendant's] hotel where he was registered as a guest. At the time Mr. Singhofen was under the influence of liquor and shaking so badly he could not write his name. He had dark circles under his eyes, but there were no cuts, bruises or abrasions on his face.

In the same hotel was a man named Clark, with whom defendant had been drinking periodically for several days.

The following night Mr. Clark, accompanied by defendant, carried Mr. Singhofen from the hotel at which time there were bruises and scratches on Mr. Singhofen's back. Defendant and Mr. Clark called a taxicab and drove to deceased's home where they left him on his bed. Before leaving the taxicab defendant gave the driver a $20 bill. Returning to the taxicab, the driver was instructed to drive to Beverly and Western. During the ride Mr. Clark and defendant had a conversation. When they left the cab Mr. Clark asked the driver if he had overheard them. Upon receiving a negative reply, Mr. Clark said, "You had better not recall what you heard or seen, or heard what we were talking about." The fare was a little over $2.00, but when the driver offered defendant change for the $20 bill previously given him, defendant said "forget it" or "I don't want any change" or some such expression.

At about 9:30 Saturday evening defendant called Mr. Jackson, whose business is the relief and rehabilitation of alcoholics, and told him there had been a "big fight over here," and that Herb, referring to Mr. Singhofen, had been hurt. Defendant sought Mr. Jackson's assistance. Mr. Jackson went to the home of Mr. Singhofen, which was a shack on the rear of 617 Coronado Street, and found his dead body. He thereupon called the police. Deceased's body was terribly battered and beaten.

Upon examination of defendant's hotel room, blood was found on the wall and blood on a pillow slip. Defendant testified relative to the events of June 18, 1954; that he left decedent in his room at about 6:00 p. m. "I went out and ate and·saw some guys and I felt better. I left him on the floor. When I came back, I picked up this boy Clark to help me lift him up and put him on the bed. He was lying on his back with blood streaming from his mouth. His shirt was full of blood. We took his shirt off. I think we threw it in the wastebasket and *layed* him on the bed. Then we cleaned his face and shaved him. This was about 9:30 or 10. . . .

"As soon as we shaved him and cleaned his face Clark looked at him and said, 'this man is dead'. He stopped breathing—he had no pulse. Clark seemed to know something about it—he is about 6'4″—about respiration so he tried to revive him with artificial respiration—slapped his face—nothing—we couldn't get any life in him. Then Clark got the idea—let's get him out of the hotel. I am drunk—it seemed like a decent idea at the time—don't know why. We took him out. He carried him out, I couldn't carry him. We took him out to this trailer house and left him draped over the bed. I didn't know, I opened the door and said put him in the bed and we went back."

He denied striking the decedent at any time and when questioned about the blood on the wall, defendant explained that it was the result of a bloody nose after being struck by the deceased about a week before. When later questioned about the blood on the wall and when asked whether or not he would object to a blood type test, defendant admitted that the blood was that of deceased, and that about 10 days before he had struck deceased on the nose after being struck by him.

From the foregoing evidence the jury were justified in finding that defendant took deceased to his room; both parties had been drinking; they had engaged in a fight and that deceased had been severely beaten with the result that he died. Under such facts it is evident the jury was justified in inferring that decedent was killed by defendant upon a sudden quarrel, and that he was thus guilty of manslaughter.

The evidence disclosed that defendant had admitted there had been a fight in his conversation with Mr. Jackson; also that he gave conflicting stories as to the source of the blood on the wall in his room.

In view of the fact that we cannot say that "upon the

face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt,'' (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]) we must conclude that the foregoing evidence was sufficient to support the verdict of guilty.

■ Second: *Did the trial court err in refusing to give the following instruction requested by defendant?*

''You are instructed that as a matter of law the evidence in this case does not justify and would not support a conviction of murder; therefore, it will be your duty to confine your consideration to the question of the defendant's guilt or innocence on the included offense of manslaughter and that offense is defined elsewhere in my instructions. As to the latter offense, the court has not and does not by giving of this instruction intend to express any opinion on the question of guilt or innocence of the defendant.''

*No.* The trial court in lieu thereof instructed the jury as follows:

''By the Constitution of California, a judge of this court, presiding in the trial of an action, is authorized, within proper bounds, to comment to the jury on the credibility of any witness and on any other phase of evidence.

''[In accord with that authority, and with a view to aiding you in determining the facts, I propose to make certain statements concerning the evidence in this case, but before doing so,]

''I would caution you that it is your right and duty to exercise the same independence of judgment in weighing the judge's comment on the evidence as you are entitled to exercise in weighing the testimony of the witnesses and the arguments of counsel.

''You will keep in mind that you are the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to you. Such authority as the trial judge has to express his personal thought on any of these matters is confined to the sole purpose of aiding you in arriving at a verdict, and may not be used, and is not used in this case, to impose his will upon you or to compel a verdict.

''I advise you from the evidence in this case you are not warranted in finding the defendant guilty of murder in the first or second degrees.''

In both instructions the court advised the jury that a conviction of murder was not justified by the evidence. The instruction requested by defendant contained a statement

that the court did not intend to express an opinion on the question of guilt or innocence of defendant. The instruction given contained a statement that it was the right and duty of the jury to exercise the same independence of judgment in weighing a judge's comment on the evidence as it was entitled to exercise in weighing the testimony of the witnesses and the argument of counsel, and that the jury was the exclusive judge of all questions of fact, and "such authority as the trial judge has to express his personal thought on any of these matters is confined to the sole purpose of aiding you in arriving at a verdict, and may not be used, and is not used in this case, to impose his will upon you or compel a verdict."

It thus appears that the instruction given by the court was substantially the same as the instruction requested by defendant. It is not error for a court to refuse to give a requested instruction where the subject matter thereof is substantially incorporated in the instruction given. (*People* v. *Barber*, 62 Cal.App.2d 206, 213 [6] [144 P.2d 371].)

Therefore the court's action was without error. An examination of the record discloses that defendant had a full and fair trial.

The judgment and the order denying the motion for new trial are and each is affirmed.

Moore, P. J., and Fox, J., concurred.