[Crim. No. 6484.   Second Dist., Div. One.   July 2, 1959.]

THE PEOPLE, Respondent, v. CLYDE ETRESS, Appellant.

Clyde Etress, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

WHITE, P. J.—The Grand Jury of Los Angeles County returned an indictment wherein defendant was charged with a violation of section 11500 of the Health and Safety Code, a felony, in that on or about March 14, 1958, he unlawfully sold a narcotic, to wit, heroin. A prior felony conviction of the crime of escape was also alleged. Defendant pleaded not guilty and denied the alleged prior conviction. Trial by jury was duly waived. By stipulation, the People's case was submitted on the transcript of the testimony taken before the grand jury, each side reserving the right to offer additional evidence. After the court had read the grand jury transcript and heard additional evidence, defendant was adjudged guilty of the offense charged in the indictment. His motion for a new trial was denied, and he was sentenced to state prison. No finding was made on the prior conviction of the crime of escape. From the judgment and the order denying his motion for a new trial, defendant prosecutes this appeal.

As to the factual background of this prosecution, the record reveals that at approximately 6 o'clock on the evening of March 14, 1958, Los Angeles City Police Officer George Renty,

attached to the narcotics detail had a transaction with defendant, when the former met the latter on Central Avenue near 43rd Street in the city of Los Angeles. The officer approached defendant and asked him, "What's happening man?", to which defendant replied, "Man, do I know you?" The officer replied, "Man, you know you've seen me around here on the avenue." At this point, according to the officer's testimony, the defendant "seemed to recognize me" and said, "Oh, yeah, I remember you now. What do you need?" Thereupon, the officer said, "I only have ten dollars, so let me have one of those ten dollar things." Defendant thereupon took a small green balloon from his mouth and Officer Renty gave him 10 dollars in change for it. This balloon was taken to the Central Police Station, marked and booked as evidence. There was white powder in the balloon at the time it was received. Officer Renty initialed the balloon, and placed it, together with its contents, in a small vial container. He placed the vial container in a small manila envelope which in turn was placed in a larger manila envelope marked "Grand Jury Exhibit 49-1." Then, he sealed the envelope with red sealing wax and placed his fingerprint on the seal.

On March 20, 1958, Police Officer Jack Olin Carter, a qualified forensic chemist of the Scientific Investigation Division of the Los Angeles Police Department, received the sealed envelope marked "Grand Jury Exhibit 49-1." He opened it by cutting around the red seal with a pair of scissors and removed the contents, a small manila envelope containing a small glass vial, and within the glass vial a blue balloon tip. The balloon tip was found to contain approximately four grains of a white powder. Officer Carter subjected samples of this powder to a series of chemical and microscopic tests, and as a result of these tests formed the opinion that the white powder contained the narcotic commonly referred to as heroin.

Sworn as a witness in his own behalf defendant testified that at no time did he deliver a blue balloon to Officer Renty at or near Central Avenue and 43rd Street, or to anyone else. He denied he ever saw the officer until April 19, 1958, the day he was arrested. That he was acquainted with the vicinity of Central Avenue and 43rd Street, but went there only occasionally. When defendant was arrested on April 19, 1958, he was taken to the.Police Administration Building where he had a conversation with Officer Renty, Officer Frederickson, and other officers. A tape recording of that conversation was played in the courtroom at defendant's request. Defendant

testified that the tape recording was incomplete and did not record that one of the officers stated that, "I had an umbrella and I wore boots" and also there was no recording of the statement by one of the officers that a certain Yocum Smith was involved in the transaction. Defendant denied that he ever uses an umbrella or wears boots or that he was acquainted with Yocum Smith.

Appellant first contends that the evidence, consisting of an exhibit (blue balloon containing heroin) is totally insufficient to connect him with the crime charged for the reason that Officer Renty who made the purchase, in his testimony, described the color of the balloon allegedly purchased from appellant as "green," and when the balloon was introduced into evidence, it proved to be "blue" in color. Under cross-examination, Officer Renty admitted testifying that he had purchased a "green" balloon from defendant, and that when produced at the trial, it appeared to be a "greenish-blue." The following further cross-examination ensued:

"Q. What is the color of this balloon as you see it? A. Blue.

"Q. Blue, that is correct. This is not the balloon you got from Mr. Etress that date? A. Yes, it is.

"Q. You testified the balloon you got from him is green and this one is blue. How do you account for the difference? A. It looked green to me.

"Q. It looked green on that day but today it does not look green; is that right? A. That is correct.

"Q. Why do you indicate it is the same balloon if it looked green on that day and today it looks blue? A. I initialed the balloon.

"Q. You were working on several cases during that time, were you not? A. Yes.

"Q. This was part of a mass roundup and you initialed several balloons? A. That is correct.

"Q. Some red and blue and green, some orange; is that correct? A. That is correct.

"Q. The only thing, in other words, that connects this balloon in your mind with Mr. Etress is the initials RO? You don't have a date on this balloon, do you, on the balloon itself? A. Not on the balloon itself.

"Q. And you don't have an identification as to the defendant on the balloon, do you? A. No.

"Q. And you said on the day in question the balloon you allegedly received from this defendant was green; that is what

you testified to before the Grand Jury, is that correct? A. That is correct.

"Q. Was this balloon that you see here that has been introduced in evidence—this is blue? A. Yes, it looks blue."

An unbroken line of authorities support the statement that an appellate tribunal may not retry a cause, reweigh the evidence or determine the credibility of witnesses. These are functions which rest exclusively with the duly constituted arbiter of the facts whose duty it is to resolve conflicts in the evidence. (*People* v. *Flummerfelt*, 153 Cal.App.2d 104, 106 [313 P.2d 912].) As was said in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778] : "We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.)" In the case now engaging our attention, as stated by respondent, "The sole conflict in the evidence consists of the testimony of Officer Renty as to the color of the balloon he purchased and the one which was offered into evidence at the trial. This conflict is immaterial in light of the ample evidence of the proper custody and identification of the envelopes in which the exhibit was contained from the time of the purchase until the time that it was analyzed and brought to the trial. The trial judge resolved this conflict in relying upon the evidence of proper custody and the fact that it was probably an understandable mistake on the part of the witness at the time he made the purchase."

We are satisfied that it cannot be said, in view of the evidentiary features of this case, that the conclusion arrived at in the court below is unsupported by any substantial evidence upon any hypothesis whatever. Therefore, we are not authorized to disturb that conclusion (*People* v. *Mangiameli*, 149 Cal.App.2d 642, 645 [308 P.2d 762] ; *People* v. *Ames*, 151 Cal.App.2d 714, 720 [312 P.2d 1111] ; *People* v. *Woodard*, 145 Cal.App.2d 529, 536 [302 P.2d 834]).

Appellant's final contention is that the record reveals that the trial judge was "prejudiced against" him. This claim is based upon the following which occurred during the direct examination of Officer Robert F. Frederickson, called as a

defense witness. In answer to questions propounded by appellant's counsel, the officer testified he was present at a conversation between himself, Officer Renty and appellant following the latter's arrest on April 19th; that the conversation was recorded, and that the officer had with him in court a tape recording of said conversation. Thereupon, appellant's counsel requested ". . . hearing that tape recording at this time." After further discussion of the purpose for hearing the recording, and the tape was introduced into evidence as defendant's Exhibit A, the following occurred:

"THE COURT: Do you expect to show by this recording a contrary statement made by Mr. Renty?

"MR. SWEENEY: That is correct, to establish it did not happen the way he said it happened before the Grand Jury.

"THE COURT: I don't care what he said before the Grand Jury. I am not——

"MR. SWEENEY: This was submitted on the Grand Jury transcript so we have to take this testimony here.

"THE COURT: We will take it as though it were given here today, yes.

"You are still trying to show that he made a contrary statement; is that what you are trying to do?

"MR. SWEENEY: Yes, sir.

"THE COURT: Well, I guess we will have to listen to that thing."

We fail to perceive wherein the last mentioned remark of the trial judge indicates, as urged by appellant, a prejudicial attitude toward him. To us it appears manifest that the remark was merely an indication on the part of the judge that he was not particularly impressed with the evidentiary value of a tape recording. Indeed, appellant himself testified, "I definitely know there is parts of the conversation that did not appear on the tape." A reading of the entire record shows no prejudice upon the part of the trial judge toward appellant at any time during the trial. ■ Furthermore, at no time during the trial, was any claim made of bias or prejudice on the part of the judge, and it cannot be raised for the first time on appeal (*People* v. *McClinton*, 112 Cal.App.2d 830, 832 [247 P.2d 393]). Appellant was fairly tried and justly convicted.

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.