[Crim No. 3400.   Third Dist.   June 25, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES "SLIM" DAVIS, Defendant and Appellant.

Joan N. Thomas, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendants Charles Davis and Anna Lee Edwards were found guilty, after a jury trial, of conspiracy (Pen. Code, § 182) to sell marijuana (Health & Saf. Code, § 11531) and defendant Davis was separately found guilty of the sale of marijuana. Davis has appealed from the judgment following said verdicts. Anna Edwards has not appealed.

A contention that the judgment is unsupported by substantial evidence is untenable.

On May 25, 1962, at approximately 1:55 a.m., Officer Jiminez, an undercover narcotics agent, received a telephone call at his motel room from a woman whose voice he recognized as that of defendant Anna Lee Edwards. She informed Jiminez that "Slim" (a nickname by which Davis was known to both) had marijuana for sale to him. Jiminez arranged to meet Anna "in front of Ike's," a bar, in 10 minutes. He kept the appointment. He was met by Anna. She told him he was being "checked."

Defendant Davis joined the officer and Anna. Officer Jiminez's identification of Davis was positive. He had met him on several occasions before. The circumstances of these earlier meetings will be described below. Davis told Jiminez he had

"twelve joints" (12 marijuana cigarettes) which he would sell to Jiminez for $12. The officer paid Davis $12 and received the marijuana. Anna reached over and took one of the cigarettes as her share for arranging the transaction.

The officer left, phoned and met Sergeant Clark, delivering the cigarettes to him. Laboratory tests established the cigarettes to be marijuana.

Davis was arrested some days later while accompanied by Jiminez. (They were returning from Marysville.) Davis, whose defense now is that it is a case of mistaken identity by Jiminez, then admitted the full marijuana transaction to the police. Anna, when apprehended, also admitted it. A tape recording was made of Davis' confession. It was played back to the jury. Part was unintelligible. It has not been transcribed as a part of the record. Davis, testifying on his own behalf, admitted on cross-examination it was his "voice" which the tape recording machine played back and there is tacit admission that his "voice" confessed the sale of marijuana to Jiminez. Davis testified he did not remember making the confession, but if he did make it it was because the officers had promised him they would release him after he had talked. The officers, denying any promises, testified that Davis's statement was made voluntarily. This, as well as all other conflicts in the evidence, we must resolve in favor of the People on this appeal.

The prosecution's evidence was believed by the jury and was sufficient to support the guilty verdict.

Davis points to mistaken estimates by Jiminez as to Davis's height, weight and age. Jiminez described Davis as being in his late 20's or early 30's. Davis says he is 39. The officer estimated Davis's height as 6 feet 7 inches and his weight as 240 or 245. Davis says he is 6 feet 3½ inches tall and weighs 225. The discrepancy merely affected the weight of the officer's testimony. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) The estimates, moreover, were being given by the officer as a witness in the defendant's presence during the trial. The conflict was between Jiminez's observation and defendant's testimony. We find nothing in the record indicating that Davis's *actual* measurements were taken or vital statistics obtained. The jury had an advantage over this reviewing court. It could observe Davis; make its own evaluation. Our ability to weigh this conflict in the evidence, therefore, could not equal the jury's even if we had the power to do so.

The officer who identified Davis had had ample opportunity

to become familiar with his appearance. Defense attorney, cross-examining Jiminez, himself established this. In the process by which this was accomplished an answer was given by the witness as to an earlier meeting between Davis and him which is the basis of the next claim of error.

Officer Jiminez, on cross-examination during questioning regarding previous meetings between Davis and himself, was asked: "Q. And then you speak of another time across the street from the Casa Blanca? A. *Yes, we bought some narcotics.* MR. OHMER [Defense counsel] I move again this be stricken. MR. BLACKSTOCK: I think it answers the question. MR. OHMER: I just asked what other times, where it was, I didn't ask what happened. THE COURT: Proceed." (Italics supplied.)

It is contended that failure to grant the motion to strike the answer is prejudicial error. We do not agree with the Attorney General's assertion that the answer was, in fact, responsive to the question. A general question alluding to a meeting at another "time" at a given place does not invite the witness to include that which happened on the occasion in his answer. The motion to strike should have been granted as to all that portion of the answer after the word "yes." (Code Civ. Proc., § 2056.) However, the court's failure to strike, which appears to have been inadvertent, was not, in our opinion, prejudicial.

Isolated from the rest of the transcript the superficial impression in the excerpt quoted above is that a police officer witness by the answer "we bought some narcotics," implied another purchase made from defendant and that the witness was deliberately trying to slip in inadmissible evidence for the express purpose of prejudicing defendant with the jury. Read in context we do not attribute either design or prejudice to the remark.

The passage quoted was a part of a long, earnest and searching cross-examination in which defense counsel brought out in detail the earlier meetings in Marysville between Jiminez and Davis, the location of these meetings and, to some extent, the circumstances thereof. Jiminez had already been established as an undercover narcotics agent who, before going to Butte County, had worked in Marysville. Earlier, during counsel's cross-examination, it had already been developed (without objection) that the officer had there made marijuana purchases. He had met or seen Davis on several of these occasions, at which meetings a number of other persons were also present. It was not stated that the

marijuana purchases by Jiminez were made from Davis nor that he was involved.

The answer "we bought some narcotics" therefore did not necessarily implicate Davis either as the seller or buyer. On the occasion referred to Jiminez had been with one Otis Leroy Edwards, known to him as "Skinner." All that was shown regarding Davis on this occasion was that he had not been with Jiminez but had walked over to an automobile in which the officer was sitting.

The answer was harmless and failure to rule on the motion to strike could not have been prejudicial. Clearly there has been, in this case, no miscarriage of justice. Our review of the record convinces us that defendant received a fair trial. His guilt was so conclusively established that it appears highly improbable the jury could have reached a different verdict had the unresponsive answer been stricken (or had it not been uttered). (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment is affirmed.

Schottky, J., and Friedman, J., concurred.