[Crim. No. 8724.   Second Dist., Div. One.   Sept. 3, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID KASSAB, Defendant and Appellant.

Hertzberg & Geretz and Harrison W. Hertzberg for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction on a charge of grand theft.

In an indictment presented by the grand jury of Los Angeles County in February 1962 it was charged that on or about March 16, 1959, the appellant with his codefendant Freeman committed grand theft (Pen. Code, § 487, subd. 1) in that they unlawfully took money and interests in real property, the total value of which exceeded $200, then and there the property of Burl and Isabel Matheny. Appellant pleaded not guilty, a jury trial was waived and it was stipulated that the cause should be submitted on the testimony contained in the transcript of the proceedings had before the grand jury and all of the exhibits received at the grand jury hearing. No additional testimony was to be submitted by either side. Appellant was found guilty as charged and sentenced to the state prison. This appeal followed.

A résumé of some of the facts is as follows: Burl Matheny purchased some property in Little Lake, Inyo County, in 1954 for approximately $50,000 and by 1958 his equity therein was about $70,000. He desired to move to Los Angeles and in an effort to dispose of his Little Lake property responded to an advertisement of the Mammoth Realty Company in Sherman Oaks. Freeman, the codefendant of appel-

lant, was supposedly the owner of the realty company and he gave Matheny a list of several properties owned by appellant Kassab including a lot on Sherman Way listed as being 270 feet by 90 feet in size. After some negotiations a trade was arranged whereby Kassab was to get the Little Lake property in exchange for the Sherman Way lot and a note secured by a second deed of trust upon a place known as Grundy's Lodge near San Francisco. The lot as heretofore indicated was represented as being 270 feet by 90 feet and the trust deed on the Grundy place was represented as being a second deed of trust but in effect a first deed of trust for the reason that the note securing the first deed of trust was paid down to a small amount and would be paid off before the completion of the escrow. In reliance upon the representations so made by Kassab, Matheny transferred the Little Lake property to Kassab and permitted Kassab to take possession of the Little Lake property before the close of escrow.

It developed, in fact, that the Sherman Way property was not as represented but was 200 feet by 90 feet in size. The rear 70 feet of the lot were subject to an attachment. The deed of trust placed in escrow by Kassab on the Grundy place was a fourth deed of trust and not a second deed of trust. Furthermore the note secured by the first deed of trust was not close to being paid off. There was also evidence that the trust deed records had been forged. Matheny lost a sum in excess of $55,000 and in any event lost an amount in excess of $200. Appellant did not testify at the grand jury hearings or at the trial in court.

A Miss Hoiland who apparently handled in part the escrows at the Guarantee Escrow Company where the transactions between Matheny and Kassab were in escrow, refused to testify concerning her connection and knowledge of the escrows involved upon the grounds of advice of counsel and that her answers might tend to incriminate her.

Appellant now asserts that the evidence does not support a finding that he intended to defraud Matheny, that there was no actual fraud, that there is no showing that Matheny relied upon his representations and that the value of the property was not established. In short he contends that the evidence was insufficient to sustain the charge.

Appellant seems to labor under the misguided impression that the trial court was required to believe his codefendant, who voluntarily appeared before the grand jury and made a statement and answered some questions, and to disbelieve the hand-

writing experts, Matheny and other disinterested witnesses. The rule in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], has been set forth hundreds of times heretofore and no useful purpose would be served by quoting therefrom. Suffice it to say that there is no merit to appellant's contentions.

In 1927 the amendment to Penal Code, section 484, was adopted which in part and in effect consolidated the offenses of nonforcible appropriation of another's property, larceny, embezzlement and false pretenses. The consolidation did not create new crimes, or enlarge the scope of any of the old ones. The appellant here is well informed of what occurred in this connection for he was a codefendant in *People* v. *Dimitrovich,* 194 Cal.App.2d 710, where the law was spelled out on pages 717 to 719 [15 Cal.Rptr. 407].

See also *People* v. *Ashley,* 42 Cal.2d 246, 259 [267 P.2d 271], where the court said: ''To support a conviction of theft for obtaining property by false pretenses, it must be shown that the defendant made a false pretense or representation with intent to defraud the owner of his property, and that the owner was in fact defrauded.'' See also Witkin, California Crimes, chapter V.

The record in this case leaves no doubt that appellant made false pretenses or representations with intent to defraud Matheny. Only one false pretense is required to constitute the offense. *People* v. *Caruso,* 176 Cal.App.2d 272, 276 [1 Cal.Rptr. 428]. ''A representation as to the quantity of a thing offered for sale may constitute a false pretense where it involves a statement of fact known to be false.'' (35 C.J.S. § 14, p. 651, and cited in *People* v. *Platt,* 124 Cal.App.2d 123, 132 [268 P.2d 529].)

The record would seem to indicate in this case that Kassab was experienced in real estate transactions and this court is familiar with his activities which were recited in *People* v. *Dimitrovich, supra,* where the events occurred at approximately the same time as the events with which we are concerned in the present case.

As to whether Matheny relied upon the false representations of appellant it is apparent that Matheny did so rely upon such statements and so testified before the grand jury. It is true that it was not until later that Matheny made some independent checks and investigation when and where he ascertained the falsity of the representations; however immediately upon finding out the facts he went to the police.

Furthermore it is the rule that it is not necessary that

the defrauded party rely entirely upon the defendant's misrepresentation in parting with his property. "The false pretense or representation must have materially influenced the owner to part with his property, but the false pretense need not be the sole inducing cause." (*People* v. *Ashley, supra,* 42 Cal.2d 246, 259.)

The proof of appellant's intention must of necessity come from his acts and conduct. Here there were untrue statements and appellant must have known of their untruthfulness at the time he made such statements; furthermore there was positive evidence of fraud as to who had signed the deeds of trust in the escrow.

Matheny netted approximately $14,000 from a sale of the Sherman Way property and he could not sell the fourth deed of trust on the Grundy place. In short, Matheny's financial standing was reduced by about $56,000 as a direct result of appellant's criminal machinations. (See *People* v. *Haney,* 126 Cal.App. 473, 475 [14 P.2d 854].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 23, 1963.