[Crim. No. 5458.   Second Dist., Div. One.   May 9, 1956.]

THE PEOPLE, Respondent, v. J. W. INCE et al., Defendants; HOWARD JOHN WILLIAM GRAY, Appellant.

Howard John William Gray, in pro. per., Forno & Umann and Harry M. Umann for Appellant.

Edmund G. Brown, Attorney General, and Arthur L. Martin, Deputy Attorney General, for Respondent.

FOURT, J.—The appellant was convicted of burglary in the second degree and after denial of his application for probation, and denial of his motion for a new trial, was sentenced to the state prison. He appeals from the judgment rendered and from the denial of the motion for a new trial.

In an information filed in the Superior Court in Los Angeles County, J. W. Ince and Howard John William Gray were charged with burglary in violation of section 459 of the Penal Code. It was alleged that on February 4, 1954, in Los Angeles County, defendants entered a storage shed and building owned and occupied by RCS Engineering Company with the intent to commit theft. It was also alleged that there had been two prior felony convictions of defendant Gray in the state of Texas. After arraignment each defendant pleaded not guilty and appellant denied the prior convictions. Trial by jury was waived and the cause was submitted on the transcript of the preliminary hearing and other and additional evidence by both parties. The court found appellant guilty as charged and found both prior convictions to be true.

A fair résumé of the evidence is as follows: Bruce A. Barnes testified that he is the general manager of RCS Engineering Company in Glendora; that connected with their business is a storage yard on Cherry Street, in Paramount, and up until about February 4, 1954, the company had a quantity of valves stored in the yard; about February 9, 1954, Barnes noticed that the 4-inch valves which had been stored in the yard at Paramount were missing; he noted that a number of boards had been knocked off the back of the building; he then called the owner of the building and the sheriff's office; there was a daytime watchman at the yard, but none at night; the next time he saw the valves was when

he saw 12 of them at the Long Beach Pipe and Supply Company in Long Beach; the valves were first stored at the yard on January 17, 1954, at which time the building was in good repair with reference to any missing boards; the valves in question were a special type, brass mounted, expensive and infrequently used in this country; the manufacturer's name of the valves is "Crane Valve, 4-inch, brass mounted screw valve"; the operators of a ranch at Los Alamitos, known as the Vessels Ranch, had specially ordered a number of these valves from the manufacturer, Chicago Crane Company, to be used in an installation at the ranch; however, it was afterwards determined to install a different sprinkler system and aluminum valves; the ranch operators bought the sprinkler system and aluminum valves from the RCS Engineering Company, and that company took the Crane valves in trade; there were 53 of the valves taken in trade, and 41 of them were at the Paramount yard, each being worth about $42 on the wholesale market; the valve which was in evidence in court was identified as being the same as the ones in storage, excepting that the manufacturer's identification tag had been removed. The valves were not usually sold in a group. The brass-mounted screw is a distinguishing feature of the valve and no one else has them in Southern California. Barnes did not know either of the defendants.

Harry M. Levin testified that he is with the Long Beach Steel and Pipe Company and that he knows Gray and has had many transactions with him; that on February 9, 1954, he bought 12 valves from Gray for $121, and at the time of this sale, Gray told him that he got the valves in a trade for an engine; that he made a sales ticket and junk dealer's report (including the license number of the seller's car) to the police. He identified the sales ticket and the police report as the ones which Gray had signed at the time of the sale.

Edward W. Klinglesmith, a deputy sheriff of the county of Los Angeles, testified that he spoke to Gray about the valves; that he asked Gray if he had been in Long Beach on February 9, 1954, and Gray replied that he had not; Gray further stated that his Chevrolet automobile had not been in the area either, and that he had not sold any valves to Levin on February 9, 1954; Gray denied signing the "buy form" and stated that "he did not know what Levin was trying to pull"; Gray further stated that he had not seen any valves of that particular type. Klinglesmith took a handwriting exemplar from Gray.

John Norris, a deputy sheriff of Los Angeles County, testified that he spoke to Gray on February 18, 1954, and Gray stated to him that the grey colored 1939 Chevrolet automobile behind the house was his car and that he was a junk dealer; that he had not sold any 4-inch valves in Long Beach; that he had not even been in Long Beach within the last month, and had not sold anything to the Long Beach Steel and Pipe Company and he further denied that the signature on the "buy slip" was his. Norris investigated at the scene of the theft and noticed the missing boards and trampled grass outside the building and stated that it appeared to him as if heavy objects had been drawn through the grass.

It was stipulated that if Frank McCoy were to be called he would testify that Gray had tried to sell him 4-inch valves such as the ones Gray had sold to Levin for $14 per valve, and that the valves that Gray had tried to sell to him appeared to have grass stains on them. It was also then stipulated that the handwriting on the ticket and the "buy forms" is that of Gray.

Frank R. Perry testified that he is the assistant manager of the Los Angeles Branch of the Crane Company; that he is familiar with valves such as the ones Gray sold to Levin. That such valves are used in the petroleum business and that they had not sold as many as 12 such valves out of stock in the last six months.

John L. Harris qualified as a questioned documents examiner and stated that in his opinion the endorsement on the check which Gray received from Levin in payment of the valves was written by Gray.

John W. Cays, the chief clerk of the local branch of the Crane Company, testified that he was familiar with the stock of the company and that the valve in court had the customary factory paint job on it.

Fred H. Fowler, the Division Merchandising Supervisor with the National Supply Company, testified that he has the agency for the sale of Crane valves in the Torrance district; that the paint on the valves sold by Gray to Levin appeared to be a regular factory finish and that if the valve had been used the "loose gland" would have to be tightened to prevent leakage.

Edmund L. Moore, a salesman of Grinnell Company, which sells pipe valves, testified that he sold 54 4-inch Crane valves

to the operators of the Vessel Ranch and that the valve in court had a factory paint job.

H. Blaine Weaver was called by the defendant and testified that he had sold scrap and junk valves to the defendant; that he was not sure that there were any Crane valves in what he sold; that the valves he did sell were junk, otherwise he would not have sold them.

Raymond E. Pickering was also called by the defendant and testified in substance that his company gathers salvage and that he had known of 4-inch Crane valves in the junk which he had disposed of.

Gray testified in his own behalf and admitted the signature on the "buy slip" which Levin had made out in connection with the sale. He stated that he was in the junk business and that the valves he sold to Levin had been secured at the Pomona Laundry and that they had been reconditioned and polished and he had sold them as new valves. He then admitted the two prior felony convictions in Texas. He further stated that he had sandblasted the valves sold to Levin.

Ralph Simonds, a laboratory technician of the Long Beach Police Department, testified on rebuttal that he was familiar with machinery operations and that the valve in court appeared to be new and that he found no evidence of sandblasting thereon.

Appellant contends that the trial court's judgment of guilty was contrary to the weight of the evidence. ■ It was appropriately stated in *People* v. *Newland,* 15 Cal.2d 678, at page 681 [104 P.2d 778]: ". . . The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ■ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' "

■ We are of the opinion that the facts and circumstances of this case are clearly sufficient to support the trial court's conclusions.

The judgment and the order denying the motion for a new trial are, and each of them is affirmed.

White, P. J., and Doran, J., concurred.