[Crim. No. 1454.    Fourth Dist.    Dec. 12, 1960.]

THE PEOPLE, Respondent, v. EULA AGNES JONES, Appellant.

Thomas Whelan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was convicted of the murder of a 3-year-old boy. The degree was fixed at second degree. She was sentenced to state prison. She appeals from the judgment and from the order denying her motion for a new trial.

In general substance, the facts shown by the record before us are as follows: Deceased was a boy of 3 years of age, named Keith Allen Stone. He was in generally good health except for a vitamin deficiency, and weighed about 35 pounds. For more than a year prior to November 10, 1959, he and his 4-year-old brother, Billy, lived in the home and under the care of defendant, Eula Agnes Jones. They had been placed in this home by their mother. Defendant had six other children of her own, some of whom were small and lived at home. During the year relatives and neighbors saw numerous bruises on the faces, feet, legs and bodies of the two boys. Responding to an inquiry from the great-grandmother, defendant stated, "They do it playing. . . ." However, in October defendant told Keith's grandmother that she had had to whip Keith repeatedly, saying, "Well, I believe in giving them a whipping and making it stick. I don't believe in all this child psychology stuff." On November 10, a neighbor saw defendant whip Keith on two occasions with what looked like a switch, first while Keith was standing and then 20 or 30 minutes later while he was lying on the ground. Another neighbor saw the whipping on the ground and described it in this fashion: "Mrs. Jones reached up and she snaps this switch off the tree, and I saw her then switching him. He was on the ground. She switched him and she switched him and I couldn't stand it any longer. I went on into the living room and then I went upstairs." Other witnesses saw other whippings.

At 5 p.m. that afternoon, a Dr. Steen received a telephone call from a person identifying herself as Mrs. Jones. She said she had switched a boy who was in her care, he had thrown a tantrum and had fainted. In response to the doctor's question if she had hit him on the head, the woman replied, "No." Nothing was said by her about the boy having struck his head on anything. A second call was received by Dr. Steen about 6:30 p.m. The boy still had not responded or talked. Again nothing was said by the caller about the boy having struck his head on anything. A third call sometime after 9 p.m. brought Dr. Steen to the home, and he found Keith still unconscious and suffering from what he believed

to be a brain injury. Again nothing was volunteered by defendant about Keith having bumped his head. Keith was then taken to the hospital and operative attempts were made to save him, but he died shortly thereafter from severe cerebral edema and spinal and cerebellar contusions caused, in the opinion of the doctors, by multiple blows to the head. In a statement to a police officer the same night, defendant stated that she spanked Keith on five separate occasions for disobedience. She indicated that Keith had had a previous or preexisting brain injury, but did not mention Keith's striking his head on anything that day.

On the following day, November 11, defendant admitted she had whipped Keith with a stick; that she put him to bed and when he tried to get out, she tied his arms so that he could not get out; that sometime later she released him and he went outside; that while outside she beat him on the feet with a wooden toilet-bowl brush handle; that she laid Keith on the floor and raised his feet to beat him on the feet; that when he squirmed, she stood on his hands in order to keep him from getting away; that she weighed approximately 180 pounds; and that she did not remember whether or not she had her shoes on. She further stated: ''This is the first time I ever whipped anybody that hard in my life. I don't know what happened.'' She again denied having struck Keith on the head, but although questioned at some length on different possibilities of how the head injury occurred, she did not mention Keith having struck his head on a door jamb or anything else. However, in her defense testimony, she states that she followed him into the garage, was going to spank him, he threw himself on the floor, she looked for something to spank him with and picked up a stick or handle lying on the washing machine, she whacked him on the bottom of his feet; ''He kept pulling at my legs and I stepped on his hand and then on the other hand . . .''; that when he got up he started towards the door with his head down and bumped into the door facing or jamb; that she caught him, picked him up, he was limp, carried him in the house, held him under the faucet, he did not revive, she dried him, laid him on the floor and later the calls were made to the doctor; that the first call was made by her daughter, but she participated in the second call. She produced two witnesses who testified that she had told them about the boy striking his head on the door jamb.

The medical testimony, including that of an autopsy surgeon of very extensive experience (he had performed more than

7,000 autopsies), showed severe welt marks on the body caused by some flexible object, multiple bruises on the arms, hands and fingers, older bruises on the legs, feet bruised and swollen twice their normal size up to the ankles, subdural hemorrhage, severe cerebral edema and spinal and cerebellar contusions caused by multiple blows on the head. In the autopsy surgeon's opinion, there were five different points of contact or blows on the head. His testimony was, without objection, supported and explained by some eighteen pictures and colored slides. The numerous exhibits are not before us. They were not requested by either party. No complaint is made regarding instructions.

### SUFFICIENCY OF EVIDENCE

Defendant's statement of her first ground on appeal is that the evidence is insufficient to justify the verdict and will not support the judgment. She first argues that there is no evidence that the death of Keith resulted from any criminal agency. ■ In discussing the sufficiency of the evidence on appeal, it must be borne in mind that "In a criminal prosecution the weight of the evidence is for the jury to determine, and if the circumstances reasonably justify a verdict of guilty by the jury, an opinion of the reviewing court that those circumstances might also be reasonably reconciled with the innocence of the defendant does not warrant a reversal of a verdict of guilty by the jury." (*People* v. *Merkouris*, 52 Cal.2d 672, 678 [1] [344 P.2d 1].)

■ It is well established that proof of the corpus delicti may be had by circumstantial evidence. (*People* v. *Clark*, 70 Cal.App. 531, 544 [233 P. 980] ; *People* v. *Cullen*, 37 Cal. 2d 614, 624 [234 P.2d 1].)

■ We are satisfied that the foregoing recital of facts entitled the jury to believe, as reasonable men and women, that death occurred by unlawful means. The jury was under no compulsion to believe the story of defendant that the boy hurt his head by running into a door jamb, in view of the fact that other inferences were reasonably deducible from the evidence, and in view of her failure to inform either the doctor or the officers of this version.

### EVIDENCE EXCLUDED BUT LATER ADMITTED

■ Defendant next complains that at one point the testimony of two witnesses to the effect that defendant had told them on the day of the death about the incident of Keith's striking his head on the door jamb, was excluded by the court.

However, these witnesses were later recalled to the stand, the court reversed its ruling, and this testimony was allowed to come before the jury in full. Defendant was represented by able and experienced counsel. Defendant contends that the prejudice in the court's earlier ruling was not cured, and that the prosecuting attorney unfairly implied that these two witnesses were not reliable because they gave their testimony at a later time in the trial. After reading in full the argument of the prosecutor on the subject, we can find no merit in the assertion. After commenting on the fact that the door jamb was never mentioned in the statement to police officials, the district attorney referred to the fact that defendant's daughter, Bonita, did not relate anything about the door jamb, and that the only people who heard that version were the two witnesses mentioned who came back after defendant had testified to the door jamb story. We find no implication in this such as is attempted to be placed thereon by defendant.

Furthermore, defense counsel apparently placed no such interpretation on the district attorney's argument at the time it was given, for he made no objection. At that time, and in his own argument, which followed that complained of, he had ample opportunity to correct such impression if he thought it existed in the minds of the jurors. He does not appear to have mentioned it.

The comments of the district attorney on this subject in the rebuttal argument merely refer to this testimony as rebuttal. We find nothing in the district attorney's argument which was prejudicial on this subject. The testimony referred to was all, in fact, admitted, and there was no prejudice.

DISTRICT ATTORNEY NOT GUILTY OF PREJUDICIAL MISCONDUCT

Defendant next complains that the district attorney was guilty of prejudicial misconduct, first, in the argument concerning the door jamb matter, which we have sufficiently discussed hereinbefore; next, because the brother, Billy, at the age of 4 was brought into the courtroom as a possible witness, claiming this was done merely to inflame the jury. We find nothing in the circumstances nor the questions asked of Billy which could reasonably be interpreted as either being intended to or, in fact, a possible cause of inflaming the minds of the jurors. Billy was asked no questions respecting the facts of the case, as it was ultimately decided that he could not qualify. The fact that Keith was not as big as Billy was a well-established fact in the case and the comment of the

district attorney was purely factual, being a very brief reference. It was not unfair to call the jury's attention to Keith's size.

Next, the district attorney is accused of prejudicial misconduct by referring in his argument to the use of a light stick to tap on an individual's feet to cause pain. After referring to the use of the stick on Keith's feet, the district attorney commented on this type of punishment by saying, "But where this type of activity is performed, in some countries it is done with a bamboo rod."

We find nothing in this which can be properly criticised as unfair argument or misconduct. (*People* v. *Kinder,* 122 Cal. App.2d 457, 465 [7] [265 P.2d 24].)

A review of the entire evidence convinces us that the case was fairly tried. We are further satisfied that the jury, from the evidence, was entitled to draw the conclusion that Keith was brutally beaten about the head and body with no considerable provocation; that his death was caused by this beating; and that defendant was the person who committed the acts. The jury was also entitled to conclude that the beating was intentional and malicious and without lawful justification. Malice is implied when no considerable provocation appears, or when the circumstances show an abandoned and malignant heart. (Pen. Code, § 188.) As was said in *People* v. *Toth,* 182 Cal.App.2d 819, 831-832 [6 Cal.Rptr. 372], quoting from *People* v. *Ogg,* 159 Cal.App.2d 38, 48 [323 P.2d 117]:

" 'Before the verdict of a jury which has been approved by the trial court can be set aside on the ground of the insufficiency of the evidence it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. We must assume in support of the judgment the existence of every fact which the jury could reasonably deduce from the evidence. If the circumstances reasonably justify the verdict, the opinion of the reviewing court that those circumstances might also be reconciled with the innocence of the defendant will not warrant a reversal. . . .' " See also *People* v. *Newland,* 15 Cal.2d 678, 680 [1] [104 P.2d 778]; *People* v. *Love,* 53 Cal.2d 843, 850 [1-2] [350 P.2d 705]; *People* v. *Lint,* 182 Cal.App.2d 402, 411 [6 Cal.Rptr. 95].

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.